James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Ph: (212) 839-5889
Fax: (212) 839-5599
Email: jarden@sidley.com

JUDGE CROTTY

15 CV 2946

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

GOJO INDUSTRIES, INC.,

              Plaintiff,

    v.

INNOVATIVE BIODEFENSE, INC.; and
AQUARIUS GLOBAL ENERGY PARTNERS, LLC,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**ECF Case**

**COMPLAINT**

**Jury Trial Demanded**

Case No.:

RECEIVED
APR 15 2015
U.S.D.C. S.D. N.Y.

Plaintiff GOJO Industries, Inc. ("GOJO"), by and through undersigned counsel, brings the following Complaint against Defendants Innovative Biodefense, Inc. ("IBD") and Aquarius Global Energy Partners, LLC ("Aquarius GEP") (collectively "Defendants") and alleges the following:

<u>**NATURE OF THE CASE**</u>

1.      This is an action in diversity for preliminary and permanent injunctive relief, compensatory damages, punitive damages, and attorneys' fees arising from the conduct of the Defendants in violation of the Lanham Act, 15 U.S.C. §1125(a); New York general business laws prohibiting deceptive trade practices and false advertising; unfair competition under New York common law; and intentional interference with business relationships.   GOJO and

Defendants manufacture competing hand hygiene products.  In an effort to divert customers to their products, Defendants are falsely representing to potential customers that their products are FDA-approved and are providing false documents that purport to be created by the FDA that support this conclusion.  Additionally, Defendants have and continue to make knowingly false and/or misleading representations regarding the safety and efficacy of GOJO's products in comparison to Defendants' products.  In so doing, Defendants are representing to the consuming public that their products are safer and/or more effective than GOJO's products, which contradicts numerous studies and findings to the contrary, and without proper or sufficient scientific support for such statements.  This false and misleading comparative advertising has caused irreparable harm to GOJO and defamed the reputation of its products in the marketplace. Moreover, the nature of Defendants' misrepresentations regarding the safety and efficacy of these hand hygiene products has a potentially hazardous effect on public health and safety.

## THE PARTIES

2.      GOJO is a corporation duly organized and existing under laws of the State of Ohio and is headquartered at One GOJO Plaza, Suite 500, Akron, Ohio 44311.  GOJO is authorized to and does conduct business in the State of New York and other states.

3.      Defendant IBD is a corporation duly organized and existing under the laws of the State of California and is headquartered at 21581 Midcrest Drive, Lake Forest, California 92630. Upon information and belief, IBD is registered with the New York Secretary of State as a foreign corporation at 250 West Nyack Road, Suite 210, West Nyack, New York 10094, and has conducted business at 303 S. Broadway, Tarrytown, New York and 171 East 71st Street, New York, New York.  IBD has conducted business within the State of New York, has initiated litigation in this Court and been subject to suit in other courts in the State of New York, and

knew or should have known that its action and/or conduct would have consequences within the State of New York and within this District.

4.      Defendant Aquarius GEP is a limited liability company duly organized and existing under the laws of the State of New York and is headquartered at 117 East 71st Street New York, New York 10021.   Upon information and belief, Aquarius GEP does business throughout the United States and engages in the marketing and sale of products and services in the State of New York.

5.      Defendants have partnered together to market and distribute hand hygiene products and related services in the State of New York and beyond.   Upon information and belief, Defendants have marketed and sold products to hospitals, schools, and hotel chains such as Marriott and Hilton, which have multiple locations in the State of New York.   Upon information and belief, some or all of Defendants' products are or have been manufactured in the State of New York.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties and the amount in controversy exceeds $75,000.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because the Complaint states a cause of action under the federal Lanham Act.  The Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in the Complaint occurred in this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

**GOJO manufactures PURELL® Sanitizer, America's #1 instant hand sanitizer**

8.     This action concerns false advertising, false representations, and/or misrepresentations made about GOJO's PURELL® Instant Hand Sanitizer (hereinafter "PURELL® Sanitizer") and about IBD's Zylast® hand sanitizer products.  Defendants' actions in this regard have and continue to cause irreparable damage to GOJO and have potentially hazardous effects on public health and safety.

9.     GOJO produces and sells PURELL®-brand instant hand sanitizers, antibacterial soaps, and surgical scrubs, which are alcohol-based products that are sold in New York, throughout the United States and beyond.

10.     PURELL® Sanitizer is America's #1 instant hand sanitizer and a nationally-recognized brand.  PURELL® Sanitizer is scientifically proven to kill 99.99% of most common germs that may cause illness.  When used according to instructions, PURELL® Sanitizer is a safe and effective product.

11.     PURELL® Sanitizer is an alcohol-based hand sanitizer.  The Food and Drug Administration's ("FDA") Tentative Final Monograph for Healthcare Antiseptics ("TFM"), 21 CFR Parts 333 and 369, classifies alcohol-based products containing between 60% and 95% ethanol as Category I agents.  The FDA recognizes Category I agents as safe and effective.

12.     PURELL® Sanitizer contains between 62% and 70% ethanol depending on the formula, and is the most recognizable and category-defining brand of alcohol-based hand sanitizers.  PURELL® Sanitizer has met or exceeded the requirements of the Centers for Disease Control and Prevention ("CDC") and World Health Organization ("WHO") for hand sanitizers.

The CDC and WHO have conducted and published extensive reviews and studies of alcohol-based hand sanitizers and concluded the following:

- Alcohols have excellent in vitro germicidal activity against gram-positive and gram-negative vegetative bacteria, including multidrug-resistant pathogens (*e.g.*, MRSA and VRE);

- Alcohols effectively reduce bacterial counts on the hands;

- An alcohol-based hand rub (*i.e.*, sanitizer) can prevent pathogen transmission of heavily contaminated hands more effectively than handwashing with soap and water;

- Alcohol-based rinses or gels containing emollients cause substantially less skin irritation and dryness than soaps or antimicrobial detergents;

- Contamination of alcohol-based solutions has seldom been reported.

13.     Additionally, a report of a nationwide, multiyear effort to reduce infections in hospitals in the United Kingdom shows that the use of alcohol-based hand sanitizers resulted in major reductions in MRSA infections and saved thousands of lives.  Numerous other studies have confirmed the efficacy of PURELL® Sanitizer.

14.     GOJO distributes and sells PURELL® Sanitizer to numerous hospitals, schools, school districts, and individuals throughout the United States and beyond.

15.     GOJO's success in the highly competitive industry of instant hand sanitizers is dependent upon the quality of its product, its FDA classification, and the reputation of its product, PURELL® Sanitizer.

16.     As a result of GOJO's investment of significant resources, GOJO has developed substantial goodwill among consumers and the industry in the State of New York and beyond.

**Defendants Manufacture and Sell Zylast® in Competition with PURELL®**

17.     IBD produces and offers for sale competing products under the brand name "Zylast®." These products include hand sanitizers, antibacterial soaps, and surgical scrubs (see photograph below).



18.     Aquarius GEP markets Zylast®-brand products on behalf of IBD to customers and potential customers (including, without limitation, customers of GOJO), and in the process creates and disseminates marketing materials making representations about the safety and efficacy of Zylast® and PURELL® Sanitizer.  Additionally, IBD has partnered with Aquarius GEP in an effort to deploy the Zylast® technology to crisis areas around the world, including the Ebola outbreak in West Africa.

19.     Defendants market and sell Zylast® in direct competition with PURELL® Sanitizer.

20.     Defendants distribute or attempt to distribute Zylast® to customers throughout the United States.

21.     Defendants market and sell Zylast® instant hand sanitizer in two different formulations.  The active ingredient in one formulation, Zylast® Antiseptic Lotion (shown in the above photograph in the foreground on the left), is a compound known as benzethonium chloride ("BZT"), a quaternary ammonium compound ("QUAT").  The FDA considered QUATs in the TFM but concluded that the data were insufficient to establish the safety and efficacy for this active ingredient in such products intended for ongoing use, such as hand antiseptics.  Therefore, the FDA classifies QUATs as Category III agents, meaning that "available data are insufficient to classify as safe and effective, and further testing is required."

22.     In its own Technical Summary, IBD recognizes and admits that QUATs have "never been known to work quickly or powerfully enough against germs to be a widespread alternative to alcohol sanitizers."

23.     While QUAT-based hand sanitizers may legally be marketed so long as they are in compliance with the TFM (and many such compliant products are currently on the market), the FDA does not formally approve any individual hand hygiene products.  Likewise, the FDA does not formally endorse or approve of any single active-ingredient hand hygiene product or any product claims included on the product's bottle, wrapper, or packaging.

24.     As a result of the known limitations in QUAT-based hand sanitizers, Defendants market and sell a second formulation of hand sanitizer called Zylast® Antiseptic (shown in the above photograph in the foreground on the right side).  This formulation contains two active ingredients:  alcohol and BZT.  The interaction of these two active ingredients and some of its

testing is described in a patent application filed by IBD with the World Intellectual Property Organization ("WIPO") and published on January 30, 2014.

25.      Hand hygiene products with more than one active ingredient may not be legally marketed under the TFM as there is no reliable data supporting the safety and efficacy of such products.  Unlike single active-ingredient products, the FDA has determined that in order to legally market dual active-ingredient products, a New Drug Application ("NDA") must be approved by the FDA.  An NDA is a time-consuming and costly process requiring an applicant to conduct several phases of testing and provide those results to the FDA for review and approval.  Upon information and belief, Defendants have not applied for an NDA from the FDA nor has the Zylast® Antiseptic product been approved by the FDA.

**Defendants Falsely Represent to Potential Customers that Zylast® is FDA-Approved**

26.      IBD has recently made public statements and presentations acknowledging that the FDA does not "approve" individual hand hygiene products marketed under the TFM, and that dual active-ingredient products may not be legally marketed without an NDA approved by the FDA.

27.      Despite this knowledge, Defendants have falsely represented to customers and potential customers that Zylast® products are approved by the FDA.  GOJO has recently learned that Defendants have sent current GOJO customers false and misleading documents claiming that the Zylast® products are approved by the FDA in an effort to divert those customers from GOJO's products to their products.

28.      For example, on or about March 2, 2015, a representative of Defendants sent an email to Imperial Bag & Paper Co., LLC ("Imperial Bag," a current customer of GOJO) stating that Zylast® products "have been approved by the FDA."  Defendants also represented to this

customer that they are "the only hand/body hygiene company that has the FDA approval claim written on the outside of the bottle." (*See* email attached and incorporated as **Exhibit 1**.)

29.     Defendants subsequently represented to Imperial Bag that they are "the only hand sanitizing company to date that has the ability to make the claim of 6 hour persistence on the outside of the bottle." (*See* email attached and incorporated as **Exhibit 2**.) These representations are knowingly and demonstrably false.

30.     Defendants have directly and indirectly approached other GOJO customers and have made the same or similar misrepresentations, to wit:   that Zylast® products have been approved by the FDA, and that Defendants are permitted to place the FDA's stamp of approval on the outside of the bottle.

### Defendants are Using the FDA Logo to Mislead Potential Customers Into Believing that Zylast® Products are FDA-Approved

31.     The FDA specifically prohibits private sector companies, like Defendants, from using the FDA's logo on their materials as such use would mislead customers into believing that the FDA endorses certain products.  The FDA's Logo Policy states:

> The FDA logo is for the official use of the U.S. Food and Drug Administration (FDA) and not for use on private sector materials.  To the public, such use would send a message that FDA favors or endorses a private sector organization or the organization's activities, products, services, and/or personnel (either overtly or tacitly), which FDA does not and cannot do.  *Unauthorized use of the FDA logo may violate federal law and subject those responsible to civil and/or criminal liability.*[1]

(Emphasis in original.)

32.     GOJO has learned that Defendants have circulated to potential customers (including current GOJO customers) a document using the FDA's logo in the header and entitled

---

[1] *See* http://www.fda.gov/AboutFDA/AboutThisWebsite/WebsitePolicies/ucm218116.htm.

"FDA Approval Process for Antimicrobial Products."  A portion of this document is reproduced below:  (A complete copy of this document is incorporated herein as **Exhibit 3**.)



**Food and Drug Administration**

**FDA Approval Process for Antimicrobial Products**

The FDA does not formally "approve" individual hand hygiene products.  Like with many products, the FDA regulates the industry using a Tentative Final Monograph (TFM), which was published in 1994.  In this document, the FDA lays out approved active ingredients (alcohol, BZT, iodine) and their approved concentrations.  All sanitizers currently on the market fall under this TFM.

All of the Zylast products are sold in compliance with that Tentative Final Monograph, as are all antimicrobial products on the market today.  The Zylast Antiseptic Lotion and Foaming Soap contain BZT (0.2%) in the allowed concentrations as the active ingredient, while the Antiseptic and Surgical Scrub have ethanol (76%) as the active ingredient.  Both of these are within the range specified by the FDA.

33.     For example, on or about March 20, 2015, a representative of Defendants sent this document to Imperial Bag in an attempt to divert Imperial Bag's business from GOJO to themselves.  (*See* **Exhibit 2**.)  Upon information and belief, Defendants have sent this document to additional current GOJO customers.  This unsigned and undated document bearing the name and logo of the FDA is intended by Defendants to induce customers into believing that their products are endorsed by the FDA when they are not.

**Defendants Are Making False and Misleading Statements About PURELL® Sanitizer on their Marketing Materials**

34.     Upon further investigation, GOJO has learned that recent and ongoing advertising and marketing materials published by Defendants on their websites and the websites of their agents and disseminated to customers and potential customers in other forms of media contain false advertising and/or misleading statements which disparage and defame alcohol-based hand sanitizers, of which PURELL® Sanitizer is the category-defining brand.  (Some examples of Defendants' marketing materials are incorporated herein as **Exhibit 4**.)  Defendants' misrepresentations are likely to cause and have caused a likelihood of confusion and

misunderstanding as to the safety and efficacy of PURELL® Sanitizer as an instant hand sanitizer. GOJO has been and continues to be irreparably damaged by Defendants' actions.

35.    By way of illustration, Defendants have made multiple false and/or misleading representations about PURELL® Sanitizer and alcohol-based hand sanitizers in general in interstate commerce, including without limitation, that:

a) "Many people are unaware that alcohol-based hand sanitizers are not only drying and ineffective against re-contamination, but they can also be dangerous."

b) "Most alcohol-based sanitizers do not have a high rate of kill against viruses. Research has shown that it is actually more effective to just rinse your hands with plain water than use alcohol sanitizers against Norovirus, the leading cause of the stomach flu."

c) "Unlike alcohol-based sanitizers like Purell [sic] and GermX, Zylast products are specifically formulated to be effective against a broad spectrum of germs to include bacteria (including drug-resistant bacteria such as MRSA), viruses, molds, fungi, and more."

d) "Alcohol is of very little use [in killing Norovirus] – in fact, it's even less effective than just rinsing hands with plain water!  This is why a recent study showed that nursing homes that use alcohol sanitizers are 6 times more likely to have a Norovirus outbreak than those that rely on handwashing alone."

e) "Traditional sanitizers leave the hands cracked, dry, and painful.  Zylast is formulated to reduce irritation and keep skin healthy."

f) "A bottle of Zylast will last between 2.5 and 5 times longer than a similar bottle of Purell [sic], leading to big savings for customers."

g) "Nursing homes that rely on alcohol sanitizers are six times more likely to have a Norovirus outbreak."

h) "One 8 oz. bottle of Zylast provides the same recommended usages as five 8 oz. bottles of Purell [sic]!"

i) "Which #handsanitizer would you rather use in a #hospital? One that works for 15 seconds, or one that lasts for 6 hours? #youchoose."

j) "[I]n one hospital-sponsored study in which alcohol-based hand sanitizer Purell [sic] was compared to handwashing, infection rates increased in 3 of 4 categories studied."

36.     Defendants have made these statements and others like them in their commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of PURELL® Sanitizer and which irresponsibly and falsely call into question the safety and efficacy of this product.

**Defendants are Falsely Advertising the Qualities and Characteristics of Their Products Without Reliable Scientific Support**

37.     Unlike GOJO's products, which have been subject to many years of scientific testing to verify their safety and efficacy as hand hygiene products, Defendants' products, which have been on the market only since 2012, have been subject to very little independent testing. The data from this testing is meager at best.  However, this lack of testing has not dissuaded Defendants from making overly broad and unsupported claims as to the safety and efficacy of their products.  One such strategy has been for Defendants to play a "shell game" by taking incomplete data to support certain claims for some of their products and extending that data to other products in an effort to mislead consumers as to the safety and efficacy of their Zylast® family of products.

38.     Some of the false and/or misleading material representations in Defendants' labeling and advertisement of their product Zylast® include, without limitation, that:

    a) Zylast® products "are a topical antiviral, antibacterial, antimicrobial that have been approved by the FDA. … We are also the only hand/body hygiene company that has the FDA approval claim written on the outside of the bottle."  Defendants also state that they "are the only hand sanitizing company to date that has the ability to make the claim of 6 hour persistence on the outside of the bottle."

    b) "The active ingredient in Zylast, BZT, … is endorsed by the FDA as safe and effective in Zylast products."

    c) "With no persistence, healthcare workers can follow all hand hygiene protocols and still become infected.  If a nurse "washes in" prior to entering a patient room (if the patient hasn't been diagnosed yet) and touches the patient, their hands have no protection.  If that nurse then touches their face, clothes,

or another area of the body they could be exposed to Ebola before leaving the room – even if they have followed their hand hygiene practices perfectly. Zylast is different, providing persistent protection for six hours after application, in accordance with CDC recommendation for persistent affect."

d) "[Zylast] is said to differ from standard alcohol sanitisers in that it remains active for six hours instead of the usual 15 seconds. … If Zylast is applied before the suits are put on, the workers would still be protected against infection [from Ebola] when the suits were removed. … If something splatters, it doesn't become a death sentence."

e) "Because Zylast not only kills germs to include viruses and drug-resistant bacteria, but is also persistent for 6 hours, you and your loved ones will continue to be protected."

f) "The Zylast products are specifically designed to bond with the skin and provide persistence against transient germs. Using the same in-vitro skin model, the active ingredients in the Zylast Antiseptic were studied and compared against leading market products. The product with the combination of ethanol and BZT significantly outperformed every product on the market against transient bacteria, both gram-positive and gram-negative."

g) "[Zylast] is the only sanitizer that has been proven to reduce hospital-acquired infections (HAIs) over handwashing alone in a controlled, randomized clinical trial."

h) "There are three primary reasons for a reduction in illness with the Zylast Lotion. First, the Zylast products are persistent for six hours so children are protected beyond the 15-second lifespan of an alcohol sanitizer. Second, the Zylast Lotion is effective against pathogens like the Norovirus, rotavirus, and the common cold – some of the most prevalent diseases among children, and germs against which alcohol sanitizers are relatively ineffective. Finally, the product is water-based and moisturizes the hands, so children and staff actually like using it which greatly improves compliance."

i) "The Zylast technology is a proprietary formula that extends protection against transient germs to offering ongoing protection for 6 hours. This means that after washing with the Zylast Antiseptic Foaming Soap or using the Zylast Antiseptic Lotion, you will be protected from being re-contaminated as soon as you come into contact with new germs. Unlike alcohol-based sanitizers that lose their ability to kill bacteria as soon as the alcohol dries, the Zylast products will continue to kill new germs for 6 hours!"

j) "All Zylast products offer persistence for 6 hours."

k) Zylast® Antiseptic is still 18% effective after 24 hours.

l)   "And Zylast kills more than just transient bacteria.  It is effective against a broad spectrum of germs to include the viruses responsible for the colds and flus."

m)   "Zylast products have shown to be significantly more effective against many viruses than traditional alcohol sanitizers.  Zylast has been shown to kill 99.97% of the Norovirus on contact, and the Zylast actives destroyed more than 99% of the rhinovirus (common cold) and rotavirus (diarrhea in children), both viruses that many alcohol sanitizers are relatively ineffective against."

n)   Zylast eliminates:
Norovirus (The Stomach Flu) – 99.97%
E. coli – 99%
MRSA & VRE – 99%
Cold & Flu Viruses – 99%

o)   "Zylast kills influenza, 'the flu' and killed 99.9% of the H1N1 strain in 15 seconds!"

p)   "Zylast has been proven to kill Norovirus, HIV, Poliovirus, all influenza including H1N1, Herpes Simplex, Rhinovirus, Rotavirus, and many others."

q)   "It is also 100 times more effective than alcohol-based sanitizers against the stomach flu!"

r)   Zylast is "more than 100 times as effective as alcohol alone against Norovirus."

s)   "Zylast kills more than 99% of Rhinovirus, the highly contagious "common cold" on contact!"

t)   Zylast "kills 99.99% of germs on contact, persistent for six hours."

u)   "Zylast is also the first hand sanitizer shown to reduce hospital-acquired infection, performing more than 50% better than traditional alcohol sanitizers."

v)   Zylast "reduces hospital infection rates by 46%."

w)   "Zylast XP was shown to reduce hospital infection rates by 23.1%."

x)   "Zylast shown to reduce illness outbreaks in schools by 87.5%."

y)   "Zylast, when used in schools, reduced illness-related absenteeism by 41.6%"

z)   "[A]fter 100 daily uses for 5 consecutive days, BZT was shown to significantly increase dermal hydration, and showed "0" irritation."

aa) "Products containing 0.2% BZT are approved by the EPA against Hepatitis B, HIV, H1N1, Influenza A, Avian Influenza ("Bird Flu"), and other viruses."

(Examples of Defendants' offending marketing materials are incorporated herein as **Exhibit 4**.)

39.     Although Defendants claim in their advertising that they have tests and/or studies to support some of the above claims, the studies that are publicly available are unreliable and/or the results are not statistically significant.  Defendants have conducted tests under improper conditions that do not adequately test for and determine whether their products have any real-world application.  In fact, in an article published in the Wall Street Journal in 2013, IBD's Vice President of Research and Development admits that "it is true that the company's test doesn't translate directly to real-life benefits…"  Despite this knowledge, Defendants continue to make these and other false and/or misleading statements about the safety and efficacy of their Zylast® products contrary to public health and safety standards and in order to induce customers to convert from GOJO's products to Defendants' products.

**Defendants' Conduct is Causing Irreparable Harm to GOJO and the Consuming Public**

40.     Defendants are knowingly and intentionally misleading customers and potential customers.  Defendants' false advertisements and/or misrepresentations have purposefully, intentionally, and/or negligently made false and/or misleading statements designed to create confusion as to whether PURELL® Sanitizer is safe and efficacious.  Additionally, the FDA has not and does not approve QUAT-based hand sanitizers like Zylast® Lotion.  Moreover, Defendants have not obtained an NDA or other FDA approval to market its dual active-ingredient product, Zylast® Antiseptic Lotion, despite the lack of any studies or other scientific guidance that such products are safe and effective.

41.     Defendants propose a hand hygiene regimen that is contrary to the guidelines established by world health organizations and which exposes the public to grave harm resulting from exposure to very serious pathogens.

42.     The actions of Defendants have caused irreparable damage to GOJO and are harming the public health and safety.  Defendants cite only meager evidence to support their overly broad statements and claims, thereby misleading the public into believing that their product is safe and effective and approved by the FDA.  In essence, Defendants would like the consuming public to believe that a mother can apply Zylast® to her children's hands in the morning, send them off to school, and regardless of whatever they touch or the pathogens or viruses they encounter that Zylast® will kill those pathogens and viruses and the children will be protected the entire school day.  The science simply does not support these overly broad and misleading claims.

43.     The irreparable damage and injury that Defendants are causing to GOJO and the consuming public is certain to occur in the future if these advertisements and publications are permitted to continue.

## COUNT I
## UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, § 43(a)

44.     GOJO incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 43 of this Complaint.

45.     The acts and conduct of Defendants' business marketing, promotional, labeling, and sales advertising concerning Zylast® and PURELL® Sanitizer are likely to cause confusion, mistake, or deception as to the sponsorship and/or approval of these products in interstate commerce.

46.     Defendants' false descriptions of fact or false representations of fact were made in commercial advertising or promotion and in a manner material to the public's decision to purchase products.

47.     Defendants' false and misleading representations in their commercial advertising or promotion misrepresent the nature, characteristics, or qualities of GOJO's products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.     Defendants have knowingly and willfully committed said unfair deceptive and unconscionable acts and practices.

49.     GOJO has been irreparably damaged and will continue to be damaged in the future if said acts are allowed to be continued and, therefore, is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and based on the principals of equity and on the terms that the Court considers reasonable.

50.     As a direct and proximate result of Defendants' unfair, deceptive, unconscionable acts and practices, GOJO has suffered actual damages and is likely to suffer damages in the future.  In addition, Defendants will unjustly reap profits from sales based on consumer reliance on the advertising campaign's false and deceptive comparison of quality, performance, and value of the parties' goods and services.  Further, GOJO is entitled to reasonable attorneys' fees since Defendants have willfully engaged in deceptive trade practices knowing these practices to be deceptive, making this an exceptional case pursuant to 15 U.S.C. § 1117.

## COUNT II
## UNFAIR COMPETITION UNDER NEW YORK LAW

51.     GOJO incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 50 of this Complaint.

52.     Defendants have engaged in unfair competition with GOJO by making false and/or misleading representations in its advertising for the purpose of deceiving the public and potential customers about its product Zylast® and GOJO's product PURELL® Sanitizer.

53.     Defendants have engaged in unfair commercial practices and competition by circulation of false records and/or publications of false and/or misleading statements about its product Zylast® and GOJO's product PURELL® Sanitizer all designed to harm GOJO's business.

54.     Defendants have acted knowingly, wantonly, in bad faith and with intentional disregard to the rights of GOJO.

55.     Defendants' acts were done without justification and for the wrongful purpose of injuring GOJO and its competitive position while unfairly benefitting Defendants.

56.     As a direct and proximate result of Defendants' conduct, GOJO has been damaged and will continue to be damaged in the future.

57.     As a direct and proximate result of Defendants' unfair competition and commercial practices, GOJO is likely to be irreparably harmed with regard to its product, PURELL® Sanitizer, and is entitled to injunctive relief based on the principals of equity and on the terms that the Court considers reasonable.

## COUNT III
## DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF N.Y.G.B.L. § 349

58.     GOJO incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 57 of this Complaint.

59.     The acts and conduct of Defendants' business marketing, promotional, labeling, and sales advertising concerning Zylast® and PURELL® Sanitizer constitute deceptive acts or

practices in the conduct of Defendants' business, trade or commerce in violation of New York General Business Law § 349.

60.     Defendants' false and misleading representations in their commercial advertising or promotion are likely to cause confusion in the consuming public as to the approval and characteristics of Zylast® and PURELL® Sanitizer.

61.     Defendants have knowingly and willfully committed said unfair deceptive and unconscionable acts and practices.

62.     GOJO has been irreparably damaged and will continue to be damaged in the future if said acts are allowed to be continued and is entitled to injunctive relief based on the principals of equity and on the terms that the Court considers reasonable.

63.     As a direct and proximate result of Defendants' unfair, deceptive, unconscionable acts and practices, GOJO has suffered actual damages and is likely to suffer damages in the future.  Further, GOJO is entitled treble damages since Defendants have willfully engaged in deceptive trade practices knowing these practices to be deceptive.

### COUNT IV
### FALSE ADVERTISING IN VIOLATION OF N.Y.G.B.L. § 350 *et seq.*

64.     GOJO incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 63 of this Complaint.

65.     The acts and conduct of Defendants' labeling of its product, and sales advertising concerning Zylast® and PURELL® Sanitizer, made in the conduct of Defendants' business and in interstate commerce, are misleading in a material respect.

66.     Defendants' false and misleading representations in their commercial advertising or labeling misrepresent the nature, characteristics, or qualities of Defendants' products in violation of New York General Business Law § 350 *et seq*.

67.     Defendants have knowingly and willfully committed said false and misleading business practices.

68.     GOJO has been irreparably damaged and will continue to be damaged in the future if said acts are allowed to be continued and is entitled to injunctive relief based on the principals of equity and on the terms that the Court considers reasonable.

69.     As a direct and proximate result of Defendants' unfair, deceptive, unconscionable acts and practices, GOJO has suffered actual damages and is likely to suffer damages in the future.

**COUNT V**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS**

70.     GOJO incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1 through 69 of this Complaint.

71.     GOJO has a protectable business relationship with distributors and end-users of its products.

72.     Defendants have knowledge of GOJO's business relationship with distributors and end-users of its products.

73.     Defendants are selling and/or offering for sale a competing product with GOJO's PURELL® Sanitizer within the market of instant hand sanitizers.

74.     In the course of competing in said market, Defendants have intentionally engaged in wrongful means to compete by utilizing false advertising and misrepresentations as alleged hereinabove, including, without limitation, providing false documents to potential customers to induce them to believe that Defendants' products are FDA approved.  These measures were utilized by Defendants to advance Defendants' interests in competing with GOJO.

75.     Defendants' actions were for the purpose of and to seek to acquire business diverted from GOJO for itself.

76.     Defendants, without privilege or justification, have induced or otherwise purposely caused or encouraged third persons and/or entities not to enter into or continue a business relationship in said market with GOJO.

77.     The actions of Defendants are purposeful, by design and are an intentional interference with the business relationships of GOJO and third party persons and/or entities.

78.     As a direct and proximate result of the intentional interference with GOJO's business relationships, GOJO has been damaged and will continue to be damaged in the future.

WHEREFORE, Plaintiff GOJO Industries, Inc. respectfully requests that this Court order the following:

A.     Judgment declaring that Defendants Innovative Biodefense, Inc. and Aquarius GEP LLC, have:

(1)     violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(2)     engaged in unfair competition in violation of the common law of the State of New York;

(3)     engaged in deceptive trade practices and false advertising in violation of §§ 349 and 350 of the New York General Business Law; and

(4)     intentionally and tortiously interfered with Plaintiff's business relationships in violation of New York law.

B.     Preliminary and permanent injunctions granted pursuant to Federal Rule of Civil Procedure 65, enjoining Defendants and their affiliates, partners, manufacturers, distributors,

representatives, servants, employees, attorneys, and all persons in active concert, privity, or participation with Defendants, directly or indirectly, from any false and/or misleading advertising, promotional efforts, sales efforts, or marketing efforts; from competing unfairly with GOJO; from engaging in deceptive trade practices in violation of federal or state law; from interfering with the economic advantage of GOJO; from committing further business defamation of PURELL® Sanitizer; and, specifically prohibiting Defendants from the following unlawful advertising practices:

(1)     Publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, print, the Internet, any commercial, advertisement, magazine, brochure, or other display, or circulating or utilizing in any manner whatsoever the logo of the Food and Drug Administration ("FDA") on any advertisement or promotion of Zylast® products;

(2)     Publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, print, the Internet, any commercial, advertisement, magazine, brochure, or other display that claims, directly or by necessary implication, or that makes any implied claim, that:

(a)     Zylast® products are approved and/or endorsed by the FDA;

(b)     PURELL® Sanitizer (and alcohol-based hand sanitizers in general) is not safe and effective; PURELL® Sanitizer is irritating to the skin and destroys causes cracking and pain; PURELL® Sanitizer is not safe for children or elderly persons; PURELL® Sanitizer is dangerously flammable; Zylast® is "far superior" to PURELL® Sanitizer; PURELL® Sanitizer does not kill Norovirus; PURELL® Sanitizer has not been proven to reduce hospital-acquired infections; PURELL® Sanitizer is not safe for use in schools or hospitals

(c)    QUAT-based hand sanitizers are "FDA approved" as safe and effective; Defendants' products are "approved" or "endorsed" by the FDA; Zylast® is safer and more effective than PURELL® Sanitizer; Zylast® persists for 6 hours; Zylast®, unlike PURELL® Sanitizer, is specifically formulated to be effective against a broad spectrum of germs to include bacteria, viruses, molds, fungi, Norovirus, Rhinovirus, E. coli, MRSA, VRE, Herpes, HIV, Poliovirus, H1N1, Cold and flu viruses, etc.; a bottle of Zylast® will last between 2.5 and 5 times longer than PURELL® Sanitizer; Zylast® is superior to PURELL® Sanitizer in killing germs; Zylast® treats or would prevent Ebola; Zylast® kills influenza; Zylast® is 100 times more effective than PURELL® Sanitizer against the stomach flu; Zylast® reduces hospital infection rates by 46%; BZT is recommended by the FDA; Zylast® still persists even after 24 hours;

(3)    Committing any false and/or misleading advertising, promotional, sales, or marketing acts that endanger public health and safety or that are calculated to cause purchasers to believe that Zylast® is a safe, effective instant hand sanitizer and PURELL® Sanitizer is not;

(4)    Utilizing any false and/or misleading marketing, sales, promotional, or advertising in magazines, trades, publications, journals, websites, trade show literature, brochures, presentations or any other electronic or printed media making any of the above representations relative to Zylast® and/or PURELL® Sanitizer.

C.    A temporary restraining order enjoining Defendants and their affiliates, partners, manufacturers, distributors, representatives, servants, employees, attorneys, and all persons in active concert, privity, or participation with Defendants, directly or indirectly, from publishing or disseminating, in any form or in any version or in any medium, including but not limited to television, print, the Internet, any commercial, advertisement, magazine, brochure, or other

display, or circulating or utilizing in any manner whatsoever (i) the logo, mark, or any other feature of the Food and Drug Administration ("FDA") on any advertisement or promotion of Zylast® products, and (ii) any claim that Zylast® products are approved and/or endorsed by the FDA;

D.      Compensatory damages awarded to Plaintiff against Defendants, jointly and severally, in an amount in excess of $75,000;

E.      Punitive damages awarded to Plaintiff against Defendants, jointly and severally, in an amount sufficient to deter other and future similar conduct by Defendants and others, in view of Defendants' wanton and deliberate unlawful acts;

F.      Judgment that costs of this action be awarded to Plaintiff.

G.      Judgment that this is an exceptional case due to the willful nature of Defendants' false advertising, and that Plaintiff be awarded reasonable attorneys' fees and expenses.

H.      Ordering the destruction of any and all materials in Defendants' possession, custody, or control bearing upon the false advertising and misrepresentations stated hereinabove including, but not limited to, products, advertisements, website information, packaging, labels, and any other printed material, along with the means of making same.

I.      Requiring Defendants to account to GOJO for all sales and purchases that have occurred to date, and requiring Defendants to disgorge any and all profits derived from Defendants selling products utilizing false advertising, unfair competition, or interference with business relationships.

J.      Requiring Defendants to file with this Court and to serve on GOJO within thirty (30) days of this Court's Order a report setting forth the manner and form in which Defendants have complied with this injunction.

K.      Such other and further relief as this Court may deem just and proper.


Date:  April 15, 2015                          Respectfully submitted,


                                               By: *James D. Arden*
                                               James D. Arden
                                               SIDLEY AUSTIN LLP
                                               787 Seventh Avenue
                                               New York, NY  10019
                                               Ph:  (212) 839-5889
                                               Fax:  (212) 839-5599
                                               Email:  jarden@sidley.com


                                               Mark J. Skakun, Ohio Bar #0023475
                                               Justin S. Greenfelder, Ohio Bar #0077924
                                               *[Pro Hac Vice Applications to be filed]*
                                               BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC
                                               4518 Fulton Drive, N.W., Suite 200
                                               P.O. Box 35548
                                               Canton, Ohio  44735-5548
                                               Phone: (330) 492-8717
                                               Fax:    (330) 492-9625
                                               Email: MSkakun@bdblaw.com
                                                        JGreenfelder@bdblaw.com


                                               *Attorneys for Plaintiff*
                                               *GOJO Industries, Inc.*

25

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff GOJO Industries, Inc. respectfully requests a trial by jury to resolve all claims and issues triable by jury.

By: _James D. Arden_
James D. Arden