**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOJO INDUSTRIES, INC.,

        Plaintiff,

   v.

INNOVATIVE BIODEFENSE, INC., and
AQUARIUS GLOBAL ENERGY
PARTNERS, LLC,

        Defendants.

Civil Action No. 15-cv-2946 (PAC)

ECF Case

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT INNOVATIVE
BIODEFENSE, INC.'S MOTION FOR
TRANSFER OF VENUE PURSUANT TO
28 U.S.C. 1404(a)**

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................2

II.  FACTUAL BACKGROUND ..................................................................................3

III.  THE COURT SHOULD TRANSFER THIS CASE ................................................8

    A.  Venue is Proper in the Central District of California. .............................8

    B.  Convenience and Fairness Require the Case to Be Transferred to the ....................9

Central District of California. .......................................................................9

        1.  Transferring this Case to the Central District of California Will Be Substantially More Convenient for Witnesses...........................10

        2.  Most of the Relevant Evidence Is Located in California. ...........14

        3.  The Parties Will Benefit from Transferring this Matter. ............14

        4.  Forcing a Small Startup Like IBD to Litigate in New York Will Pose an Undue Hardship....................................................15

        5.  California's Interest in this Matter Favors Transfer. .................16

        6.  The Central District of California is Familiar with the Relevant Law. ..................................................................................16

        7.  The Finders Agreement Between Aquarius and IBD is Governed by California Law. ..........................................................16

        8.  Gojo's Choice of Forum Should Be Afforded Little Deference..............17

        9.  This Action Has No Connection to the Separate Litigation Involving IBD's Licensing Dispute With VSP.........................17

        10.  No Other Factors Weigh Against Transferring this Action to the Central District of California. ...................................................18

IV.  CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amick v. Am. Exp. Travel Related Servs. Co.*,
No. 09CIV9780AKH, 2010 WL 307579 (S.D.N.Y. Jan. 26, 2010) .......................................17

*Berry v. New York State Dept. of Correctional Services*,
808 F.Supp. 1106 (S.D.N.Y.1992)...........................................................................................9

*Cargill Inc. v. Prudential Ins. Co. of America*,
920 F.Supp. 144 (D. Colo. 1996)............................................................................................10

*Cross-Country Productions, Inc. v. United Artists Corp.*,
865 F.2d 513 (1989)................................................................................................................17

*Decker Coal Co. v. Commw. Edison Co.*,
805 F.2d 834 (9th Cir.1986) ...................................................................................................14

*Dwyer v. Gen. Motors Corp.*,
853 F. Supp. 690 (S.D.N.Y. 1994).........................................................................9, 10, 14, 15

*Ervin & Assocs. Inc. v. Cisneros*,
939 F.Supp. 793 (D. Colo. 1996)............................................................................................10

*Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*,
745 F.Supp. 993 (S.D.N.Y.1990)..............................................................................................9

*Hawkins v. Gerber Products Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. 2013)...................................................................................10

*Hernandez v. Graebel Van Lines*,
761 F.Supp. 983 (E.D.N.Y.1991) .............................................................................................8

*Hoffman v. Blaski*,
363 U.S. 335 (1960)..................................................................................................................8

*In re Cuyahoga Equipment Corp.*,
980 F.2d 110 (2d Cir.1992).......................................................................................................9

*In re Horseshoe Entertainment*,
305 F.3d 354 (5th Cir. 2002) ..................................................................................................14

*Pac. Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968) ..................................................................................................17

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Promuto v. Waste Mgmt., Inc.,*
    44 F. Supp. 2d 628 (S.D.N.Y. 1999) ........................................................................... 10

*Reed v. Fina Oil & Chem. Co.,*
    995 F.Supp. 705 (E.D. Tx. 1998) ............................................................................... 12

*Schieffelin & Co. v. Jack Co. of Boca*
    725 F. Supp. 1314 (S.D.N.Y. 1989) ............................................................................ 9

*Schneider v. Sears,*
    265 F.Supp. 257 (S.D.N.Y.1967) ............................................................................... 9

*Turner v. Hudson Transit Lines, Inc.,*
    724 F.Supp. 242 (S.D.N.Y.1989) ............................................................................... 9

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ................................................................................................... 9

**FEDERAL STATUTES**

28 U.S.C. § 1391 ................................................................................................................ 8

28 U.S.C. § 1404 ..................................................................................................... 2, 8, 10

4820-9217-9748.1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Innovative Biodefense, Inc. ("IBD") submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. 1404(a), to transfer this action to the United States District Court for the Central District of California.

## I.   INTRODUCTION

This is a Lanham Act action brought by Plaintiff Gojo Industries, Inc. ("Gojo") (the makers of Purell) against Defendant Innovative Biodefense, Inc. ("IBD"), a fledgling company which is in the hand sanitizer business.  Despite the fact that the bulk of the events alleged in the Complaint took place in the Central District of California, Gojo filed its Complaint in this District, which is a distant forum far removed from the relevant evidence and witnesses in this action.  Pursuant to 28 U.S.C. § 1404(a), IBD requests that this Court transfer this action to the United States District Court for the Central District of California because (1) the gravamen of the events giving rise to Gojo's alleged claims occurred in California, and (2) litigating in a forum that is distant from the concentration of the relevant evidence and witnesses would be inconvenient and unnecessarily expensive for the parties.

Further developments have made the reasons for transferring this action even more compelling since the pre-hearing conference for this Motion.  First, Defendant Aquarius Global Energy Partners, LLC, whose e-mails to IBD customers regarding the FDA's approval of IBD's products provided the only connection this case had to the Southern District of New York, has stipulated to proceed with this matter in the Central District of California.  This includes an agreement by Aquarius to subject itself to the jurisdiction of that court for enforcement of the April 30, 2015 Stipulation and Order of Preliminary Injunction, as well as an agreement to appear at trial in the Central District of California should this matter proceed to trial.

Second, extensive discovery in this action has confirmed that both Gojo and IBD recognize that the key witnesses in Gojo's Lanham Act action will be California residents. Contrary to Gojo's prior representation that this action may involve dozens of New York witnesses, only one subpoena (directed at the former defendant Aquarius) involves a New York resident. In fact, of the 19 third-party witnesses that Gojo has subpoenaed in this action, 16 reside in California, one in Texas, and another in Maryland.

Since venue is more convenient in California, the Court should grant this Motion and transfer this action to the Central District of California.

## II.    <u>FACTUAL BACKGROUND</u>

IBD is the manufacturer of Zylast®, a line of persistent antimicrobial products. (Declaration of Colette Cozean ("Cozean Decl."), ¶ 2.) The company is a small, privately held startup, that was founded in May 2011. (*Id*., ¶ 4.) IBD's principal place of business is, and always has been, in Orange County, California. (*Id*., ¶ 5.) IBD is still a very small company. (*Id*., ¶ 6.) In 2014, its annual sales were in the low six figures, and more than half of the company's sales since its formation have been in California. (*Id*., ¶ 6.) The company only has two individuals working full time and both are residents of Orange County, California. (*Id*., ¶ 7.)

The gravamen of Gojo's Lanham Act action challenges as literally false certain "establishment claims" that were allegedly made by IBD. Gojo segregates these advertisements into four categories: (1) statements challenging the safety of alcohol-based hand sanitizers; (2) claims that alcohol-based hand sanitizers do not effectively kill important germs, bacteria, and viruses; (3) claims that alcohol-based hand sanitizers are not effective in reducing illness in schools or hospital-acquired infections; and (4) claims that alcohol-based sanitizers damage the skin and hands. (Complaint, ¶¶ 35, 38.) These statements were allegedly made by IBD, a California resident, via the internet on a series of websites. (Complaint, ¶ 34.) In addition to the

3

foregoing establishment claims, Gojo also alleges that Aquarius, as IBD's agent, allegedly sent inaccurate e-mails to IBD's customers which claimed that IBD's products were approved by the FDA.  (Complaint, ¶ 33.)

IBD maintains its website, www.zylast.com, in California.  (Cozean Decl., ¶ 9.)  The content of the website are formulated and created in IBD's California office.  (*Id*.)  All maintenance and updates of the website are performed in California.  (*Id*.)

Here, the witnesses with knowledge and information supporting the statements and claims which form the basis of Gojo's lawsuit against IBD are located in Orange County, California.  (Cozean Decl., ¶ 10.)

First, the statements regarding Zylast® which form the basis of Gojo's claims are based on clinical trials conducted by Zylast® in California.  (Cozean Decl., ¶ 11.)  Each of the clinical trials begins with the development of a clinical or technical protocol.  (*Id*.)  The protocol is a document that describes how a clinical trial will be conducted (the objective(s), design, methodology, statistical considerations and organization of a clinical trial), and ensures the safety of the trial subjects and integrity of the data collected.  (*Id*.)  IBD's President and Vice-President wrote the clinical and technical protocols for IBD and reviewed them in California.  (*Id*.)  Moreover, the records relating to these trials are located in California.  (*Id*.)

In addition, as demonstrated in IBD's opposition to Gojo's application for a Temporary Restraining Order/Preliminary Injunction (which was withdrawn by Gojo after IBD filed its opposition), the statements regarding alcohol-based sanitizers as to which Gojo bases its claims are based on published, scientific studies.   IBD reviewed those scientific studies and continue to review others on a regular basis in California.  (Cozean Decl., ¶ 12.)  In addition, all of the records which IBD has compiled which support IBD's claims about alcohol-based sanitizers are located there.  (*Id*.)

4

Another major issue in this case relates to the content and support for IBD's marketing materials.  IBD prepares these marketing materials in California, including those at issue in this litigation.  (Cozean Decl., ¶ 13.)  These materials are based on scientific studies, and the records regarding IBD's marketing materials which make reference to alcohol-based sanitizers are located in California.  (*Id*.)

IBD sells its products through a number of different independent contractors or independent sales representatives.  (Cozean Decl., ¶ 14.)  All of these agreements are prepared and are maintained in California, and all of the agreements are governed by California law.  (*Id*., ¶ 14, Exh. "A".)

IBD anticipates that its defense against Gojo's claims will also involve numerous other third-party witnesses who are also located in California.  (Cozean Decl., ¶16.)  For example, the following companies conduct business with IBD and have witnesses with information relevant to IBD's defenses:

- **Benchmark Cosmetic Laboratories**:  Benchmark is a cosmetic laboratory which assists IBD in the design and qualifications of its new products.  It also tests for alcohol hazards and develops information for Material Safety Data Sheets for the products.  Susan Goldsberry, President of Benchmark, is also named as a co-inventor on the Zylast® products.  Benchmark and Ms. Goldsberry are located in Orange County, California.  (Cozean Decl., ¶ 16(a).)

- **AccuBioChem Laboratories**:  AccuBioChem is a testing laboratory which does all of IBD's effectiveness and stability studies.  It also assists with establishing expiration dates.  AccuBiochem is located in Glendale, California.  (Cozean Decl., ¶ 16(b).)

- **The Hoffman Agency**: Hoffman is IBD's public relations firm.  Hoffman assists in preparing all advertisements and places them in various sources on behalf of IBD.  In addition, it monitors ads from competitors in the industry.  Hoffman is located in San Jose, California.  (Cozean Decl., ¶ 16(c).)

- **Allen & Caron, Inc.**:  Allen & Caron is IBD's corporate communications firm.  It writes all press releases on behalf of IBD, including those referring to any scientific study regarding Zylast® that is published.  The Allen & Caron employees who assist IBD are located in Irvine, California.  (Cozean Decl., ¶ 16(d).)

- **Practical Hospital Services (PHS)**:  PHS is an independent distributor of Zylast® and has the largest sales of any independent distributor.  PHS has knowledge regarding IBD's sales and marketing materials, as well as those of Gojo.  PHS is located in Orange County, California.  (Cozean Decl., ¶ 16(e).)

- **Ripley-Woodbury Marketing**:  Ripley-Woodbury assists IBD with its major marketing materials, including those at issue in this litigation.  Ripley-Woodbury (Mick Woodbury is the Principal) is located in Orange County, California.  (Cozean Decl., ¶16 (f).)

- **Danaher, Tim Taylor, Phd.**:  Tim Taylor, Phd. of Danaher Corporation wrote a definitive study on persistence, which is an issue in this litigation.  He also is an expert on the active ingredient in the Zylast® product.  Mr. Taylor is a resident of Orange County, California.  (Cozean Decl., ¶ 16(g).)

- **Patton Hospital, Menafee Hospital, San Gorgonio Hospital, Hemet Hospital, and UCLA Medical Center**:  These hospitals are locations as to which IBD

6

conducted clinical testing which verified claims relating to reduction of infection by Zylast®. Each is located in Southern California. (Cozean Decl., ¶ 16(h).)

- **CPA and Intellectual Property Counsel**: IBD's CPA and bookkeeper are located in Orange County, California, as is its intellectual property counsel. (Cozean Decl., ¶ 16(i).)

In summary, all sales oversight, customer service, research & development, formulation, regulatory, testing, quality control, stability testing, warehousing, legal, marketing, and public relations is conducted in California, and all the relevant witnesses are located in California. (Cozean Decl., ¶ 17.)

In addition to the foregoing, IBD has a Medical Advisory Board, which consists of various experts in the field. (Cozean Decl., ¶ 18.) These individuals are listed on Zylast's website, www.zylast.com. (*Id.*) None of the members of the Medical Advisory Board are residents of New York; the two who are likely to testify in defense of this matter are one from Washington and another from Michigan. (*Id.*)

To date, Gojo has subpoenaed 19 third-party witnesses in this action – 16 of which reside in California. (Declaration of Adam K. Kurland, ¶ 2.) In fact, of the 19 subpoenas that have been issued by Gojo in this action, <u>only one</u> (directed at Aquarius) was issued to a resident of the State of New York. (*Id.*, ¶ 3.)

As set forth more fully below, a venue change to the Central District of California is needed to protect the witnesses, parties, and public against unnecessary inconvenience and expense in this action.

III.  **THE COURT SHOULD TRANSFER THIS CASE**

A.  **Venue is Proper in the Central District of California.**

Pursuant to title 28, section 1404(a) of the United States code, this Court may transfer a civil action to any other district or division where it may have been brought "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A "district or division where it might have been brought" has been interpreted to mean a district where venue might have been proper and where the defendant would have been subject to process.  *Hoffman v. Blaski,* 363 U.S. 335, 344 (1960).  The purpose of section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....' " *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 986 (E.D.N.Y.1991) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)).

As a threshold matter, the Central District of California easily meets the requirements for subject matter jurisdiction, personal jurisdiction, and proper venue in this action.  Under 28 U.S.C. §1391, a civil action may only be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(1)-(3).

Here, IBD resides in California, a substantial part of the events alleged in Gojo's Complaint occurred in California, and IBD is subject to personal jurisdiction in California with respect to the present action.  A substantial predominance of IBD's business activities

8

(employees, tangible property, production activities) are located or conducted within California. As of May 2015, 100% of IBD's workforce is located in California. Thus, this action could have been brought in California.

**B.      Convenience and Fairness Require the Case to Be Transferred to the Central District of California.**

Once the threshold requirement is met, this Court may consider a motion to change venue based on "an individualized, case-by-case consideration of convenience and fairness." *Van Dusen,* 376 U.S. at 616.  Specifically, this Court should consider the following factors to determine if a transfer of venue is proper: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the weight accorded to plaintiff's choice of forum; (6) a forums' familiarity with the governing law; (7) trial efficiency and (8) the interest of justice. *See, e.g., Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 692 (S.D.N.Y. 1994); *Berry v. New York State Dept. of Correctional Services,* 808 F.Supp. 1106, 1110 (S.D.N.Y.1992) (quoting *Brierwood Shoe Corp. v. Sears Roebuck,* 479 F.Supp. 563, 565 (S.D.N.Y.1979)); *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990); *Schieffelin & Co. v. Jack Co. of Boca*, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989); *Turner v. Hudson Transit Lines, Inc.,* 724 F.Supp. 242, 243 (S.D.N.Y.1989); *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967). This Court has broad discretion to address these factors based on the particular facts of each case.  *See In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 117 (2d Cir.1992) ("Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.").  These factors, viewed as a whole, weigh in favor of transferring this matter to the Central District of California.

1.     **Transferring this Case to the Central District of California Will Be Substantially More Convenient for Witnesses.**

Transferring this matter would serve the purpose of section 1404 by protecting the witnesses and the parties from unnecessary inconvenience and expense.  The convenience of parties and witnesses is generally the most important factor in a court's determination of whether to grant a motion for transfer.  *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 692 (S.D.N.Y. 1994) (citing *Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 265 (S.D.N.Y. 1989)).  Courts have consistently recognized that the location of foreseeable witnesses supports a transfer of venue.  In *Cargill Inc. v. Prudential Ins. Co. of America*, 920 F.Supp. 144, 147 (D. Colo. 1996), the Court granted a motion to transfer venue from the District of Colorado to the District of Minnesota.  In doing so, it noted that:

> Of the 24 witnesses identified by the parties, ten reside in Minnesota.  None resides [sic] in Colorado.  If the action remains in this forum, all of the witnesses will have to travel to Colorado.  In addition, Colorado counsel will have to travel for any depositions not taken by telephone.   If it is transferred to Minnesota, by contrast, nearly half of the identified witnesses will not have to travel to testify at trial.

*Id*. at 147; *see also Ervin & Assocs. Inc. v. Cisneros*, 939 F.Supp. 793, 799 (D. Colo. 1996) (transferring venue to the District of Columbia based in part on the finding that "the parties, witnesses and records are principally located in Washington, D.C.").

When assessing the convenience of the witnesses, this Court should consider the nature and quality of the witnesses' testimony with respect to the issues of the case as opposed to the number of witnesses.  *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 639 (S.D.N.Y. 1999) ("it is not the number of prospective witnesses that determines the appropriateness of a transfer but, rather, the materiality of their anticipated testimony."*); Hawkins v. Gerber Products Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) quoting *Brandon Apparel Grp., Inc. v. Quitman*

*Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999) ("The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case.").

In this case, most of the foreseeable witnesses are in California, as all of the alleged violations of the Lanham Act took place there. All of IBD's sales oversight, customer service, research & development, formulation, regulatory, testing, quality control, stability testing, warehousing, legal, marketing, and public relations was conducted in California. (Cozean Decl., ¶ 17.) Most of the allegedly false advertisements by IBD that are at issue in this action are statements that were made by a California resident to a nationwide audience via the internet on a series of websites. (Complaint, ¶ 34.) Thus, IBD will be the focus of this litigation, and Gojo's witnesses to support its claims will be current IBD personnel who worked on IBD's marketing campaign and/or created and reviewed the advertisements at issue. As of May 2015, 100% of IBD's workforce is located in or around Lake Forest, California, and none of IBD's personnel reside outside of the Central District. (Cozean Decl., ¶ 7.)

IBD's defense against Gojo's claims will also require the testimony of third-party witnesses who reside in California. In the event of a trial in this matter, most of the percipient witnesses (other than Aquarius) would have to take time off from work and spend funds on airfare, food, and lodging, in addition to being away from their families, in order to travel from California to attend case-related proceedings in New York.

Compounding this problem, many of IBD's third-party witnesses may not be willing to voluntarily appear in the Southern District. For example, Practical Hospital Services, the largest independent distributor of Zylast® – a witness with knowledge regarding IBD's (and Gojo's) sales and marketing materials – has already informed IBD of the undue burden upon the

11

company should their testimony be necessary at trial.  (Declaration of Hillery Royer, ¶ 8.)
Practical Hospital Services has also informed IBD that representatives from many of the
hospitals where IBD conducted clinical testing to verify claims relating to the reduction of
infection by Zylast®, have informed Practical Hospital Services that the hospitals will not travel
thousands of miles to New York in this matter.  (*Id.*, ¶ 9.)  Further, Zylast Direct, the
independent distributor of Zylast® that maintains the www.zylastdirect.com website at issue in
this action has also informed IBD that trial in New York would pose an undue burden upon the
company.  (Declaration of Hotan Barough, ¶ 6.)

IBD and this Court will have little recourse to compel the attendance of any of these
California witnesses at trial, severely prejudicing IBD's ability to produce witnesses to refute
Gojo's claims.  IBD's potential inability to secure the attendance in New York of witnesses who
are located in California is a significant factor weighing in favor of transfer to California.  *See
Reed v. Fina Oil & Chem. Co.*, 995 F.Supp. 705, 714-715 (E.D. Tx. 1998) (reach of subpoena
power to compel witness attendance must be considered in transfer decision).

At bottom, the only connection this case has to New York is a statement that was
allegedly made by a single employee of Aquarius (a New York resident) in an e-mail that was
sent to IBD's customers in New York, other states, and abroad, regarding the FDA's approval of
IBD's products.  (Complaint, ¶ 33.)  Gojo 'hangs their hat' on this single communication to
connect this matter to the State of New York despite the fact that the gravamen of Gojo's claims
concerns IBD's alleged representations regarding alcohol-based sanitizers made over the internet
– allegations that will involve witnesses in California, not New York.  Gojo seemingly glosses
over the fact that Aquarius has settled with Gojo and the issues regarding Aquarius' statements
have been resolved.  Moreover, Aquarius has recently stipulated to proceed with this matter in
the Central District and has agreed to subject itself to the jurisdiction of that court.  (Declaration

of Dan Putalik; ¶ 5.)  This includes an agreement by Aquarius to appear at trial in the Central District of California should this matter proceed to trial, as well as for enforcement of the April 30, 2015 Stipulation and Order of Preliminary Injunction.  (*Id.*)

With Aquarius' stipulation, the Southern District has no remaining interest in the parties or subject matter of this action.  It is also questionable whether any third-party witnesses remain in New York whose testimony would be relevant to a party's claim or defense.  While Gojo recently claimed that its claims concerning Aquarius' e-mails regarding the FDA's approval of IBD's products would involve "60 individuals[1] [in New York or New Jersey] who received the false communication," Gojo has failed to subpoena any of these potential witnesses.  (Kurland Decl., ¶ 4.)  To date, Gojo has subpoenaed 19 third-party witnesses in this action – 16 witnesses who reside in California, one witnesses who resides in Texas, and the FDA.  (*Id.*, ¶ 2.)  Of the 19 subpoenas, only one (directed at Aquarius) involves a New York resident.  (*Id.*, ¶ 3.)

Gojo also cannot explain how the testimony of each of these individuals who allegedly received Aquarius' e-mail would be important in this action.  There is no evidence that any of the third parties actually purchased IBD's products.  In fact, the Managing Director of Aquarius has already testified that it has not made any sales of any Zylast products.  (*See* Declaration of Dan Putalik in Response to Plaintiff's Motion for Preliminary Injunction, ¶ 3.)  The testimony of each of these third parties is also unnecessary for injunctive relief since the parties have stipulated to an injunction regarding any representations of the FDA's approval of IBD's products.

Here, the convenience of witnesses – the important witnesses who will affect the claims and defenses in this action – weighs heavily in favor of transferring this case to California.

---

[1] It appears that Gojo takes great liberty with this assertion by separately identifying individuals are the same third party entity who allegedly received Aquarius' e-mails.

### 2.      Most of the Relevant Evidence Is Located in California.

In addition to the convenience of the witnesses, the bulk of the evidence related to Gojo's claims and IBD's claims is located in California.  For example, the documents related to IBD's marketing efforts and its clinical trials are all located in California.  (Cozean Decl., ¶ 13.) Additional documents that are in the possession of IBD's third party witnesses are also located in California.  (Cozean Decl. ¶16.)  Thus, transferring this case to the Central District of California will facilitate access to most of the relevant evidence.  *Decker Coal Co. v. Commw. Edison Co*., 805 F.2d 834, 843 (9th Cir.1986) (ease of access to evidence can be an important factor in deciding whether to grant a motion to transfer venue); *In re Horseshoe Entertainment*, 305 F.3d 354, 358 (5th Cir. 2002) (location of books and records weighed in favor of transfer).

### 3.      The Parties Will Benefit from Transferring this Matter.

With most of the witnesses and evidence that will be relevant in this case are located in California, the parties will be able to litigate this matter more easily in the Central District of California.  *Dwyer*, 853 F. Supp. at 692.  IBD is faced with cross-country travel burdens if this matter is heard in this District.  On the other hand, venue in the Central District will not increase the inconvenience to Gojo since it is an Ohio company.  (Complaint, ¶ 2.)  Regardless of whether this action is heard in New York or in California, Gojo will be obligated to travel to a foreign state to litigate this matter.

Further, there is no additional burden on Gojo for it to retain a new local counsel in California.  Gojo's local counsel in New York, Sidley & Austin LLP, is an international law firm with offices across the country.  Notably, Gojo's counsel has an office of nearly 150 attorneys in Los Angeles, within a few blocks of the courthouse for the Central District of California.

Litigating this matter in the Central District of California would also be beneficial to the parties in light of the injunctive relief that Gojo requests in its Complaint.  Far from being a

14

limited, narrow prohibition against e-mailing New York customers regarding the FDA's approval of IBD's products, Gojo's Complaint and Motion for Temporary Restraining Order/Preliminary Injunction shows that Gojo seeks an injunction that would transform the entire manner in which IBD creates and conducts its internet and online marketing across the country. Whether IBD and Gojo resolve this action in settlement or if Gojo prevails at trial, the result will likely be some form of an injunction related to IBD's online marketing. In consideration of judicial economy, this Court should not be overburdened with retaining jurisdiction to enforce an injunction concerning the marketing by a California company taking place thousands of miles away in California. Transferring this matter to the Central District would also limit any inconvenience to IBD resulting from the many post-injunction hearings that will take place to ensure compliance with the injunction.

Thus, the overall convenience of the parties weighs in favor of transfer in this action.

### 4. Forcing a Small Startup Like IBD to Litigate in New York Will Pose an Undue Hardship.

The relative economic means of Gojo compared to IBD in litigating in New York versus California should also be considered by the Court. *Dwyer,* 853 F. Supp. at 694. Here, there is no dispute that Gojo is a multinational corporation with tens of millions of dollars in annual revenue. By its own admission, its product is "America's #1 instant hand sanitizer and a nationally-recognized brand." (Complaint, ¶ 10.) IBD, on the other hand, is a small company with sales figures in the low six figures. (Cozean Decl., ¶ 6.) Forcing IBD to litigate this matter in New York will pose an undue hardship for the small startup. (Cozean Decl., ¶ 19.) Given the relative size of the two companies, it would be easier for Gojo to litigate in California than it is for IBD to litigate in New York. Thus, this factor weighs in favor of transferring this action.

**5.      California's Interest in this Matter Favors Transfer.**

California has a prevailing interest in adjudicating false advertising claims that allegedly took place or originated in the state.  As discussed above, the majority of the allegedly false statements that are identified in Gojo's Complaint were made in California.  Gojo claims that these representations were made to a nationwide audience via the internet and are ongoing. (Complaint, ¶ 34.)  The only "advertisements" that allegedly took place in New York were the e-mail communications that Aquarius allegedly made to potential customers.  (Complaint, ¶ 33.) With Aquarius' settlement and dismissal from this action, this District has a minimal interest in this matter.  Since the Central District of California has a greater interest in this action than any other District, a transfer is warranted.

**6.      The Central District of California is Familiar with the Relevant Law.**

The Central District of California serves over 18 million residents and is the largest federal judicial district in the United States by population.  There is no reason to dispute its familiarity with Lanham Act actions and its ability to efficiently adjudicate Plaintiff's claims and IBD's counterclaims.

**7.      The Finders Agreement Between Aquarius and IBD is Governed by California Law.**

Aquarius has settled with Gojo and the issues regarding those statements have been resolved.  However, if Aquarius' statements are at issue in this action, any examination of the company's relationship with IBD and the scope of that relationship is governed by and construed under California law pursuant to a Finders Agreement between the parties.  (Cozean Decl., ¶ 14, Exh. "A".)  All of IBD's agreements with its sales representatives is governed by and construed in accordance with California law.  (Cozean Decl., ¶ 14.)  While this Court would competently apply California law, the Central District of California is inherently more familiar with

16

California law and is the best equipped to examine these issues as it applies such law on a daily basis.  *See Filmline (Cross-Country Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (1989) (courts are entitled to give some weight to the governing law of agreements for the purposes of venue).

### 8.    Gojo's Choice of Forum Should Be Afforded Little Deference.

While a plaintiff's choice of forum is usually accorded deference, there are certain situations where this deference does not apply.  For example, where, as is the case here, the plaintiff is not a resident of the Southern District and the action is minimally connected with the district, the plaintiff's decision to bring this action in the Southern District is accorded a lesser degree of deference.  *Amick v. Am. Exp. Travel Related Servs. Co.*, No. 09CIV9780AKH, 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010).  Further, where "[t]he operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Given that (1) Gojo is not a New York resident, (2) IBD is not a New York resident, (3) Aquarius (the only New York resident) had been dismissed from this action, and (4) the operative advertisements were allegedly made by IBD in California, Gojo's choice of forum in this District should not be accorded deference.  This is particularly true in this case, where the balance of the other major factors weighs heavily in favor of a transfer to the Central District.

### 9.    This Action Has No Connection to the Separate Litigation Involving IBD's Licensing Dispute With VSP

There is no basis for Gojo to claim that there is a significant overlap of facts and witnesses between this action and IBD's pending VSP litigation in the Southern District which would support venue in this district.  The VSP litigation is a licensing dispute between IBD and

VSP regarding the patents for IBD's products.  (Cozean Decl., ¶ 20.)  None of the claims at issue in the VSP litigation involve allegations of false advertising or in any way relate to Gojo's claims.  (*Id*.)  Apart from certain senior management personnel at IBD, the VSP litigation will not involve the testimony of California witnesses – it certainly will not involve the testimony of the many third parties in California who have pertinent information in this case.  (*Id*.)

There is also no basis for Gojo to claim that IBD somehow voluntarily availed itself of venue in the Southern District by filing the VSP litigation in this district.  The only reason IBD filed the VSP litigation in the Southern District was to comply with a venue selection clause in the licensing agreement between IBD and VSP that is at issue in that separate litigation.  (*Id*.) IBD was required to file the VSP litigation in New York as a matter of law.  At bottom, there is nothing about the separate VSP litigation that would support Gojo's claim that venue is proper in the Southern District.

### 10.      No Other Factors Weigh Against Transferring this Action to the Central District of California.

Other factors that may ordinarily weigh against transfer – feasibility of consolidation with other claims and the relative court congestion and time of trial in each forum – do not apply in this case because there are no other claims to consolidate and no evidence suggesting that either district court will provide substantial advantages relating to court congestion.  However, a transfer will avoid any potential questions regarding convenience of the witnesses and prejudice to IBD.

## IV.    CONCLUSION

The totality of the claims in the Complaint and Counterclaim having only a tenuous connection with the Southern District of New York, the relevant factors favor transferring this case to the Central District of California.  Accordingly, IBD respectfully requests that the Court

grant this motion and transfer this case to the Central District of California.

DATED: June 10, 2015                    Respectfully Submitted,

                                        By: _____
                                             Adam K. Kurland, NY Bar No. 2659837
                                             FENSTER & KURLAND LLP
                                             337 North Main St., Suite 11
                                             New City, New York, 10956
                                             Telephone: (845) 638-4700
                                             Facsimile: (845) 638-4767
                                             E-mail: akurland@fkllp.com

                                             Attorneys for Defendant Innovative Biodefense,
                                             Inc.