# FENSTER & KURLAND LLP

ATTORNEYS AT LAW
337 NORTH MAIN STREET
SUITE 11
NEW CITY, NEW YORK 10956
TELEPHONE
(845) 638-4700
FACSIMILE
(845) 638-4767

ROBERT D. FENSTER, P.C.
ADAM K. KURLAND, P.C.*
* ADMITTED IN NY AND NJ

PARALEGALS:
LORI DEAN-CHIRONNO
KATHERINE M. KIVLEHAN

June 19, 2015

**VIA ECF AND E-MAIL**
Hon. Paul A. Crotty, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street, Chambers 1350
New York, NY 10007

RE:   GOJO INDUSTRIES, INC. v.
INNOVATIVE BIODEFENSE, INC. and
AQUARIUS GLOBAL ENERGY
PARTNERS, LLC
CASE NO.: 15-cv-2946 (PAC)

Dear Judge Crotty:

This office is counsel to Defendant Innovative Biodefense, Inc. ("IBD") in connection with the above-referenced matter. IBD, pursuant to Rule 3C of the Court's Individual Rules of Practice, respectfully requests that the Court schedule a pre-motion conference regarding 19 subpoenas that Plaintiff Gojo Industries, Inc. ("Gojo") has issued in this matter. While IBD does not object to the *issuance* of the subpoenas to the third-party witnesses, it objects to the substance of the individual requests, which are overbroad, seek irrelevant information, and improperly seek confidential and/or trade secret information concerning IBD. A compilation of Gojo's individual document requests is attached to this letter as Exhibit "A".

As a threshold matter, Gojo's subpoenas are invalid and unenforceable to the extent they are issued in the Southern District of New York and request documents that are located in California from witnesses in California. *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995) (subpoena which was issued out of the Western District of New York, rather than a federal court in Tennessee where production and inspection was to be made was "invalid on its face"); *Lent v. Signature Truck Sys., Inc.*, No. 06CV569S, 2010 WL 1707998, at *5 (W.D.N.Y. Apr. 26, 2010) (invalidating subpoenas issued by the Western District of New York which required appearance in Mississippi and Ohio in contravention of Rule 45(a)(2)(B)). Beyond this fatal jurisdictional flaw, the content of the subpoenas is also objectionable.

First, the majority of the requests are well beyond the scope of permissible discovery. Under the Federal Rules of Civil Procedure, "the scope of discovery" is limited to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Proc. § 26(b)(1). Courts have incorporated relevance as a factor when determining motions to quash a subpoena. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter*, 211 F.R.D. 658, 662 (D.Kan.2003)). Specifically, under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and, in particular, requires the court to consider" factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.*

Here, the gravamen of Gojo's Lanham Act action challenges as literally false certain "establishment claims" that were allegedly made by IBD and its agents via the internet. In its Motion for Preliminary Injunction, Gojo segregated these advertisements into four categories: (1) statements challenging the safety of alcohol-based hand sanitizers; (2) claims that alcohol-based hand sanitizers do not effectively kill important germs, bacteria, and viruses; (3) claims that alcohol-based hand sanitizers are not effective in reducing illness in schools or hospital-acquired infections; and (4) claims that alcohol-based sanitizers damage the skin and hands. (*See* Memorandum of Law in Support of Gojo's Motion for Preliminary Injunction, p. 15; Declaration of James Arden in Support of Motion for Preliminary Injunction, Exh. 1.) In addition, Gojo alleges that Aquarius, as IBD's agent, allegedly sent inaccurate e-mails to IBD's customers which claimed that IBD's products were approved by the FDA. (*See* Memorandum of Law in Support of Gojo's Motion for Preliminary Injunction, p. 13; Declaration of Chris Havanas in Support of Motion for Preliminary Injunction, ¶¶ 15-17.)

Thus, Gojo's discovery should be limited to only those documents that concern the allegedly false advertising regarding Purell and alcohol-based sanitizers that is at the heart of the case. Gojo's requests, however, go well beyond seeking information relevant to these claims and appears designed to harass IBD and those businesses which associate with IBD.[1] For example, Gojo's document requests seeking all communications between IBD and the third party subpoena recipients and all internal communications by the third party subpoena recipients regarding IBD or Zylast® products are grossly overbroad and goes well beyond any issues relevant to Gojo's claims. Likewise, Gojo's requests for all communications between the third party subpoena recipients and any customer or potential customer – regardless of topic – are also grossly overbroad. Similarly, Gojo's attempt to seek documents reflecting the formulation, manufacture, and sale of Zylast that are not at issue in this litigation is improper.

---

[1] This is supported by the fact that Gojo's requests appear to be largely duplicative with no effort whatsoever to tailor the requests to the type of documents the witness is likely to have.

Hon. Paul A. Crotty                        Page -3-                              June 19, 2015

Second, to the extent that Gojo seeks discovery about the formulation, manufacture, and sale of Zylast that is not at issue in this action, its requests are overbroad and burdensome.

Even when a discovery request seeks otherwise relevant information, discovery is not allowed when "the burden or expense of the proposed discovery outweighs its likely benefit" after considering the specific factors of the case, including the amount in controversy, the parties' resources, the importance of the issues and the necessity of the discovery.  Fed. R. Civ. Proc. § 26(b)(2)(C)(iii); *see also McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 76 (D. D.C. 1999).

Setting aside the fact that the vast majority of requests have no relevance, it is unclear what significant benefit any of the requested discovery would have.  This is particularly true when compared to the burden and cost of obtaining, reviewing, and producing the massive number of documents Gojo seeks from the third parties.  Gojo's subpoenas place a disproportionate burden on the third parties because the subpoenas would force them to sift through volumes of documents with no relevance when Gojo has yet to articulate any need for this discovery or its importance to any claim or defense.  In fact, given the nature of Gojo's claims, the Lanham Act and relevant case authority has long since required Gojo to plead with particularity in order to protect IBD and third parties from exactly this sort of improper fishing expedition.  Here, Gojo's discovery should be limited to only those documents that concern the claims and defenses at issue in this lawsuit.  Anything else is burdensome and harassing.

Lastly, the subpoenas seek documents containing IBD's confidential information and/or trade secrets.  Because of the breadth of the subpoenas, IBD believes that responsive documents will disclose information concerning the formulation, manufacture, and sale of Zylast and other IBD products.  This information is IBD's confidential information and/or trade secrets and there is no assurance that the documents sought by the subpoenas will not be used or disclosed by Gojo for purposes other than the litigation.  IBD's concern is especially acute in this litigation because Gojo has thus far refused to agree to a stipulated protective order with an appropriate "attorneys eyes only" provision that would limit the dissemination of documents to Gojo personnel.

On June 4, IBD sent two letters to Gojo regarding IBD's concerns with the subpoenas and reqesting a telephonic meet and confer on June 8, 9, or 10.  While Gojo did not respond to the request for a telephonic conference, it provided a written response to IBD's letter on June 10.  At IBD's further request, a telephonic conference took place on June 16.  Gojo has thus far refused to narrow its subpoenas, asserting (1) that Gojo is not aware of the types of documents that are maintained by the third parties and are entitled to leeway in its requests, (2) that the makeup of Zylast is directly implicated by the allegations in the Complaint, (3) some of the requested documents are publicly available, and (4) a protective order which permits the designation of "confidential" documents is sufficent to allay IBD's trade secret concerns.

Hon. Paul A. Crotty    Page -4-    June 19, 2015

    Thus, IBD respectfully requests the Court's scheduling of a pre-motion conference to address this issue with the hope that extensive motion practice will not be necessary. For the convenience of scheduling the conference, I am available June 29 through July 2, 2015.

    Thank you for Your Honor's consideration.

                                          Respectfully,

                                          ADAM K. KURLAND

AKK:kmk
cc:    James D. Arden. Esq. *(via e-mail)*
        Mark J. Skakun, Esq. *(via e-mail)*
        Benjamin A. Nix, Esq. *(via e-mail)*

## EXHIBIT "A"

**Gojo's Subpoenas to Shadow Holdings, LLC; Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.**

"Any and all communications with IBD, Jesse Cozean, or Colette Cozean, including without limitation communications concerning Zylast products."  From Shadow Holdings, LLC; Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.

"A sample of all labeling produced by You for Zylast products."  From Shadow Holdings, LLC; Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

"A sample of each formulation of each Zylast product manufactured by You, including without limitation formula cards or other documents sufficient to describe all active ingredients in each product."  From Shadow Holdings, LLC; Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

"Any and all documents concerning Your manufacturing process for Zylast products."  From Shadow Holdings, LLC; Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

"All documents concerning studies, data, research, publications, and bibliographies of any and all reference or source of information in any form of media supporting any of the statements made in the labeling of Zylast products, including without limitation any representation that Zylast products are approved or endorsed by the FDA."  From Shadow Holdings, LLC.

"All documents concerning studies, data, research, publications, and bibliographies of any and all reference or source of information in any form of media in Your possession concerning Zylast products including any and all components and/or ingredients of Zylast products."  From Allen & Caron; Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

"All documents concerning studies, data, research, publications, and bibliographies of any and all reference or source of information in any form of media created or obtained by You regarding Zylast products including any and all components and/or ingredients of Zylast products."  From Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

**"All agreements, contracts, notes, memoranda, or statements, whether formal or informal, between You and IBD."** From Shadow Holdings, LLC; Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.

**"All documents provided to You by IBD, Jesse Cozean, or Colette Cozean regarding Zylast products and/or PURELL Sanitizer."** From Shadow Holdings, LLC; Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.

**"Any and all internal communications concerning IBD and/or Zylast products."** From Shadow Holdings, LLC; Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.

**"All documents concerning or identifying all sales and/or shipments of Zylast products, including without limitation all purchase orders, invoices, bills of lading, shipment reports, and freight reports."** From Shadow Holdings, LLC; Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.; Practical Hospital Services; Hoffman Agency

**"Documents concerning or describing Your monthly dollar and unit volumes of sales in the United States for each Zylast product since Your first sale of each such product."** From Shadow Holdings, LLC; Zylast Direct; and Ripley-Woodbury Marketing.

**"Any and all communications or documents between You and the FDA regarding IBD and/or Zylast products."** From Shadow Holdings, LLC.

**"All communications in any form exchanged between You and any federal agency or department, including but not limited to the FDA, Centers for Disease Control and Prevention ("CDC"), the White House, the Department of State, and the Department of Defense, at any time concerning IBD, instant hand sanitizers, hand hygiene products, or Zylast products."** From Zylast Direct; Draco Hygienic Products, Inc.; Practical Hospital Services; Ripley-Woodbury Marketing; Danaher Corporation; Allen & Caron; Hoffman Agency; Benchmark Cosmetic Laboratories; Accu Bio-Chem Laboratories; and Westwood Laboratories, Inc.

**"All investor briefs, memoranda, fliers, sell sheets, or documents of any kind utilized by You in your efforts to encourage or obtain investors in IBD and/or Zylast products."** From Allen & Caron.

**"All call reports or similar documents concerning the marketing or advertising of Zylast products to investors and/or potential investors."**  From Allen & Caron; Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"All communications between You and any investor or potential investor regarding IBD and/or Zylast products."**  From Allen & Caron.

**"All communications between You and any customer or potential customer regarding IBD and/or Zylast products."**  From Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"All fliers, sell sheets, or marketing materials of any kind utilized by You in your efforts to market and sell Zylast products to customers and potential customers."**  From Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"Documents concerning or supporting all sales or commitments for sales or bookings of IBD products, including without limitation Zylast products."**  From Allen & Caron; Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"A complete accounting of all funds obtained or committed to be obtained by You for purposes of investment in IBD and/or Zylast."**  From Allen & Caron.

**"All publications including, but not limited to, websites, newspaper, magazine, journal, or newsletter articles or references concerning the sale, promotion, or advertisement of Zylast products."**  From Allen & Caron; Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"Documents concerning or identifying all outlets through which Zylast products are currently offered, have been offered, or will be offered for sale."**  From Zylast Direct; Practical Hospital Services; Hoffman Agency; and Ripley-Woodbury Marketing.

**"All safety, effectiveness, and functionality data and information in Your possession concerning Zylast."**  From Westwood Laboratories, Inc.;  Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

**"All testing protocols (including drafts), study designs, methodologies, or other documents describing any tests or studies performed by You on Zylast products and the results of those tests."**  From Westwood Laboratories, Inc.;  Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

**"All evaluations or analyses done or made by You, and the results thereof, of any data and information provided to You or obtained by You concerning Zylast products."**  From Westwood Laboratories, Inc.;  Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

"All data, methodologies, results, and conclusions created or obtained by You regarding Zylast products including any and all components and/or ingredients of Zylast products." From Westwood Laboratories, Inc.; Accu Bio-Chem Laboratories; Benchmark Cosmetic Laboratories; Danaher Corporation; and Draco Hygienic Products, Inc.

**Gojo's Subpoenas to Menafee Valley Medical Center, Hemet Valley Medical Center, Patton State Hospital, San Gorgonio Memorial Hospital, and Ronald Reagan UCLA Medical Center**

"Any and all communications with IBD, Jesse Cozean, or Colette Cozean, including without limitation communications concerning Zylast® products and/or testing thereof"

"All safety, effectiveness, and functionality data and information in Your possession concerning Zylast®."

"All testing protocols (including drafts), study designs, methodologies, or other documents describing any tests performed by You on Zylast® products and the results of those tests."

"All evaluations or analyses done or made by You, and the results thereof, of any data and information provided to You or obtained by You concerning Zylast® products."

"All data, methodologies, results, and conclusions created or obtained by You regarding Zylast® products including any and all components and/or ingredients of Zylast® products."

"All documents concerning studies, data, research, publications, and bibliographies of any and all reference or source of information in any form of media created or obtained by You regarding Zylast® products including any and all components and/or ingredients of Zylast® products."

"All agreements, contracts, notes, memoranda, or statements, whether formal or informal, between You and IBD."

"All documents provided to You by IBD, Jesse Cozean, or Colette Cozean regarding Zylast® products and/or PURELL Sanitizer."

"Any and all internal communications concerning IBD and/or Zylast® products."

"All communications in any form exchanged between You and any federal agency or department, including but not limited to the FDA, Centers for Disease Control and Prevention ("CDC"), the White House, the Department of State, and the Department of Defense, at any time concerning IBD, instant hand sanitizers, hand hygiene products, or Zylast® products."

"All documents concerning purchases by You of hand hygiene products, including without limitation purchase orders, invoices, installation records, maintenance requests, and complaints."

"All documents in Your possession concerning alcohol-based hand hygiene products, including without limitation PURELL® Sanitizer."