UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                     :

GOJO INDUSTRIES, INC.,                    :   **ECF Case**

                   Plaintiff,      :   Case No.: 15-cv-2946 (PAC)

                                   :

      v.                          :

                                   :

INNOVATIVE BIODEFENSE, INC.; and   :
AQUARIUS GLOBAL ENERGY PARTNERS, LLC, :

                   Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF GOJO INDUSTRIES, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT INNOVATIVE BIODEFENSE, INC.'S MOTION FOR <u>TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)</u>

SIDLEY AUSTIN LLP
James D. Arden
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC
Mark J. Skakun, Ohio Bar #0023475
Justin S. Greenfelder, Ohio Bar #0077924
4518 Fulton Drive, N.W., Suite 200
P.O. Box 35548
Canton, Ohio  44735-5548
(330) 492-8717

*Attorneys for Plaintiff*
*GOJO Industries, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement..................................................................................................... 1

Argument ....................................................................................................................... 2

    A.   The Central District of California Is Not a Forum Where this Case Could Have Been Brought. ........................................................................................................ 3

    B.   The Convenience and Justice Factors Do Not Favor Transfer to the Central District of California. .................................................................................................... 5

        1.   It Would Not Be Inconvenient for IBD to Litigate in the Southern District of New York As It Has Litigated in This Court for Over Three Years. ............................ 6

        2.   Most of the Material Witnesses Are Located Closer to New York than California. .................................................................................................. 9

        3.   IBD Has the Financial Means to Litigate In New York. ..................................... 11

        4.   The Wrongful Conduct That Led to this Lawsuit Occurred in This District........ 13

        5.   GOJO's Choice of Forum Should Be Entitled to Deference. .............................. 14

        6.   This Court Is Familiar with the Governing Law........................................... 15

        7.   Judicial Efficiency Weighs Against Transfer to California................................ 15

Conclusion .................................................................................................................. 16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aerotel, Ltd. v. Sprint Corp.*,
    100 F. Supp. 2d 189 (S.D.N.Y.2000) .......................................................................6

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n. v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ...................................................................14

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
    457 F. Supp. 2d 474 (S.D.N.Y. 2006) .................................................................5, 15

*Bayer Schera Pharma AG v. Sandoz, Inc.*,
    No. 08 Civ. 3710, 2009 WL 440381 (S.D.N.Y. Feb. 18, 2009) ...............................2

*Bristol-Myers Squibb Co. v. Andrx Pharm., LLC*,
    No. 03 Civ. 2503, 2003 WL 22888804 (S.D.N.Y. Dec. 5, 2003) ............................3

*ESPN, Inc. v. Quiksilver, Inc.*,
    581 F. Supp. 2d 542 (S.D.N.Y. 2008) ..........................................................5, 14, 15

*Factors Etc., Inc. v. Pro Arts, Inc.*,
    579 F.2d 215 (2d Cir. 1978) ....................................................................................2

*Fuji Film Co., Ltd. v. Lexar Media, Inc.*,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006) ...................................................................13

*In re Hanger Orthopedic Grp., Inc. Sec. Litig.*,
    418 F. Supp. 2d 164 (E.D.N.Y. 2006) .....................................................................3

*Hoffman v. Blaski*,
    363 U.S. 335 (1960) ..............................................................................................2, 4

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005) .....................................................................2

*Innovative BioDefense, Inc. v. VSP Techs., Inc.*,
    No. 12 Civ. 3710, 2013 WL 3389008 (S.D.N.Y. July 3, 2013) ...............................7

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
    119 F. Supp. 2d 433 (S.D.N.Y. 2000) .....................................................................9

*Kiss My Face Corp. v. Bunting*,
    No. 02 Civ. 2645, 2003 WL 22244587 (S.D.N.Y Sept. 30, 2003) .........................14

*N.Y. Marine and Gen. Ins. Co., v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)..........................................................................................5

*Neil Bros., Ltd. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ......................................................................9, 12, 14

*Pecorino v. Vutec Corp.*,
   934 F. Supp. 2d 422 (E.D.N.Y. 2012) ........................................................................ *passim*

*PI, Inc. v. Ogle*,
   932 F. Supp. 80 (S.D.N.Y. 1996).................................................................................4, 5

*Research Found. of N.Y. v. Luminex Corp.*,
   No. 07 Civ. 1260, 2008 WL 4822276 (N.D.N.Y. Nov. 3, 2008)....................................14, 15

*Scherillo v. Dun & Bradstreet, Inc.*,
   684 F. Supp. 2d 313 (E.D.N.Y.2010) ..........................................................................12

*Schubert v. Osram AG*,
   No. 12 Civ. 923, 2013 WL 587890 (D.Del. Feb. 14, 2013) ...........................................4

*Toy Biz, Inc. v. Centuri Corp.*,
   990 F. Supp. 328 (S.D.N.Y. 1998)..............................................................................12

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................1, 4, 5

15 U.S.C. § 1051 et seq............................................................................................6, 7, 15

N.Y. General Business Law § 349...............................................................................7, 15

Plaintiff GOJO Industries, Inc. ("GOJO" or "Plaintiff") submits this memorandum in opposition to the motion of Defendant Innovative Biodefense, Inc. ("IBD" or "Defendant") to transfer venue pursuant to 28 U.S.C. § 1404(a).

## Preliminary Statement

IBD asks this Court to transfer this case away from the district where the wrongs that led to this action occurred to its home district nearly 3,000 miles away.  IBD's motion blatantly misstates the basis of GOJO's Complaint in an effort to minimize the factual nexus to the Southern District of New York.  The customers initially targeted by IBD and Aquarius Global Energy Partners, LLC ("Aquarius") are all located in New York and the tri-state area, either within the Southern District or within the subpoena power of this Court.  Each of those customers – nearly 60 of them – are potential witnesses in this case who will testify about the misleading nature of IBD's marketing tactics.[1]  Likewise, the assertion that IBD creates its advertisements and operates its websites from California is of no moment.  These advertisements have made their way to the Southern District of New York and have not abated as a result of this lawsuit.  IBD continues to target its false advertising toward consumers in this district and, in fact, has recently and deliberately misrepresented to New York customers the status of this lawsuit and the nature of the injunctions granted against it and Aquarius.

IBD also fails to address the threshold issue for the Court's consideration, namely whether this is an action that could have been brought in the Central District of California at the time it was filed.  Aquarius is a New York corporation that admittedly conducts no business in California.  As a result, GOJO could not have brought this action in California.  By contrast, IBD conducts business in New York, its chief operating officer works and resides in New York, it has

---

[1] The fact that none of these individuals or entities has been subpoenaed yet is irrelevant.  Discovery is still in its early stages.

1

litigated for three years on similar false advertising issues in New York, and, according to the New York Department of State, it is registered to do business in New York. There is no question that, at the time of filing of the Complaint, the Southern District of New York was the only proper venue for GOJO's claims to be brought. That Aquarius now consents to jurisdiction in California is irrelevant. The Supreme Court has long held that it is immaterial whether a defendant subsequently consents to jurisdiction in another court for purposes of deciding a motion to change venue. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). This Court follows, as it must, the reasoning of *Hoffman*. *See Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 431 (E.D.N.Y. 2012); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08 Civ. 3710, 2009 WL 440381, at *5 (S.D.N.Y. Feb. 18, 2009). The Court need go no further in denying IBD's motion.

Lastly, if the Court considers IBD's contentions in its motion, it will find that many of them are called into question by the public information regarding IBD's business and its own public statements. This includes recent SEC filings, a publicly-available investor brief, and the declarations of its officers in the related litigation filed in this Court. All of these documents support the conclusion that litigating in the Southern District of New York will not impose a hardship for IBD.

## Argument

"In any motion to change venue, the movant bears the burden of establishing the propriety of transfer by clear and convincing evidence." *Pecorino*, 934 F. Supp. 2d at 429; *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). The moving party "must make a clear-cut showing that transfer is in the best interests of the litigation." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (quoting *Miller v. Bombardier, Inc.*, No. 93 Civ. 0376, 1993 WL 378585, at *2 (S.D.N.Y. Sept. 23, 1993)). The movant's burden is heavy, and unless the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed.  *See Bristol-Myers Squibb Co. v. Andrx Pharm., LLC*, No. 03 Civ. 2503, 2003 WL 22888804, at *2 (S.D.N.Y. Dec. 5, 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

A motion to transfer venue requires a two-part inquiry:  first, whether the action might have been brought in the transferee court; and second, whether transfer is appropriate considering the convenience of both the parties and the witnesses, and in the interests of justice. *Pecorino*, 934 F. Supp. 2d at 429.

## A.   The Central District of California Is Not a Forum Where this Case Could Have Been Brought.

In this case, the first relevant and necessary inquiry is whether this action might have been brought in the Central District of California.  *See In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 n.3 (E.D.N.Y. 2006) ("A threshold inquiry is whether venue is proper in the transferee forum.").  GOJO does not dispute that the Central District of California would have jurisdiction over IBD.  However, Aquarius was not subject to personal jurisdiction in California at the time the Complaint was filed.  Aquarius is a New York corporation with its principal place of business in the Southern District of New York.  IBD does not even allege that Aquarius would have been subject to suit in the Central District of California at the time the case was commenced.  Instead, IBD attempts to end-run this inquiry by submitting a declaration from Aquarius consenting to jurisdiction in the Central District of California.  It is settled law that this *post hoc* consent is irrelevant to the analysis.

"Before a case involving multiple defendants can be properly transferred, it must first be determined that all defendants would have been subject to personal jurisdiction in the transferee court *at the time the case was originally filed*."  *Pecorino*, 934 F. Supp. 2d at 430 (citing *Posven,*

3

*C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004)) (emphasis in original).

This standard was established by the Supreme Court in *Hoffman*:

> If when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant, it is a district 'where [the action] might have been brought.'  If he does not have that right, independently of the wishes of the defendant, it is not a district 'where it might have been brought,' and it is immaterial that the defendant subsequently [makes himself subject by consent, waiver of venue and personal jurisdiction defenses or otherwise, to jurisdiction in some other forum].

*Hoffman*, 363 U.S. at 344 (quoting *Blaski v. Hoffman*, 260 F.2d 317, 321 (7th Cir. 1958) and *Behimer v. Sullivan*, 260 F.2d 467, 469 (7th Cir. 1958)).

Accordingly, IBD's contention that Aquarius's subsequent consent to jurisdiction in the Central District of California makes it a proper forum will not suffice for purposes of a § 1404(a) analysis.  *See Pecorino*, 934 F. Supp. 2d at 429-31 (rejecting an attempt by a New York corporation to consent to jurisdiction and venue in Florida); *PI, Inc. v. Ogle*, 932 F. Supp. 80, 84-85 (S.D.N.Y. 1996) (defendant's consent to jurisdiction in Florida "is insufficient to overcome the statutory barrier of § 1404(a)").[2]

Moreover, in its motion, IBD presents no evidence, let alone clear and convincing evidence, that Aquarius would have been subject to personal jurisdiction in California at the time this lawsuit was filed.  Neither IBD nor Aquarius contend that that Aquarius conducts business in California or otherwise has minimum contacts in California that could suffice for personal jurisdiction to attach.  In fact, by attempting to consent to jurisdiction, IBD tacitly admits that jurisdiction over Aquarius would otherwise not be appropriate in California.

---

[2] While the 2011 amendment to § 1404(a) added that a district court may also transfer an action "to any district or division to which all parties have consented," this is not a case where all parties have consented.  GOJO opposes IBD's motion to transfer and, as such, the Court may transfer the case only if it could have been brought originally in the Central District of California.  *See, e.g., Schubert v. OSRAM AG*, 12 Civ. 923, 2013 WL 587890, at *3 (D. Del. Feb. 14, 2013) (citing *Guzzetti v. Citrix Online Holdings GmbH*, No. 12 Civ. 01152, 2013 WL 124127, at *3 n.2 (D. Del. Jan. 3, 2012)).  As demonstrated above, the Central District of California is not a court where this case might have been brought when filed.

4

IBD fails to make the "threshold" and "necessary" showing that the Central District of California was a proper forum for this action at the time it was filed.  Thus, the Court need go no further and may deny IBD's motion on this ground alone.  *See PI, Inc.*, 932 F. Supp. at 85 (denying motion to transfer for failure to demonstrate that the action might have been brought in Florida and without consideration of convenience and justice factors).

**B.      The Convenience and Justice Factors Do Not Favor Transfer to the Central District of California.**

If the Court is inclined to consider IBD's motion further, it is apparent that neither the convenience of the parties and witnesses nor the interests of justice favor transfer of this case to the Central District of California.  In determining whether to transfer venue under § 1404(a), "courts employ an individualized, case-by-case consideration of convenience and fairness." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 546 (S.D.N.Y. 2008) (quoting *Posven, C.A.*, 303 F. Supp. 2d at 401).  Courts in the Second Circuit apply the following nine factors in considering whether a matter should be transferred:  (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of witnesses; (6) the weight accorded to the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; and (9) trial efficiency and how best to serve the interests of justice, based on an assessment of the totality of material circumstances.  *N.Y. Marine and Gen. Ins. Co., v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006).  There is no rigid formula for balancing these factors, and no single one of them is determinative.  *ESPN, Inc.*, 581 F. Supp. 2d at 547.  "Unless

5

the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000).

      **1.**      **It Would Not Be Inconvenient for IBD to Litigate in the Southern District of New York As It Has Litigated in This Court for Over Three Years.**

IBD essentially glosses over the question of whether it would be convenient for it to litigate in New York, instead focusing on the alleged inconvenience to third-party witnesses and that GOJO could conveniently litigate in California.  That is likely because IBD has been litigating in the Southern District of New York for over three years.  That case, which was <u>filed by IBD</u>, is captioned as *Innovative BioDefense, Inc. v. VSP Technologies, Inc.*, *et al*, Case No. 12 Civ. 03710 (ER)(KNF) (the "VSP Litigation"), and involves similar issues and will likely involve at least some of the same witnesses.  While IBD claims that it only filed the VSP Litigation in New York because of a forum selection clause in its license agreement with VSP, that is of no moment in assessing the "convenience" to IBD in litigating in New York.  IBD obviously made the informed choice to license (or sublicense) intellectual property rights developed in New York from New York parties on terms that call for any dispute to be litigated in New York.  In 2012, it chose to pursue litigation in this Court and has done so for over three years.  IBD has not alleged in its motion, much less submitted clear and convincing evidence, that its choice to litigate in this forum for this length of time has been inconvenient.

Moreover, IBD's contentions in its brief that the VSP Litigation has "no connection" to this case and that "none of the claims at issue in the VSP Litigation involve allegations of false advertising" are patently untrue.  (IBD Br. at 17-18, Dkt. #52.)  Similar to GOJO's Complaint, VSP's counterclaims allege false advertising and Lanham Act violations against IBD for statements made regarding its Zylast® products, and further allege that IBD is subject to jurisdiction in New York because its sales activities have been targeted at New York customers:

80.    This court has personal jurisdiction over IBD and [Colette] COZEAN because upon information and belief, IBD and COZEAN have engaged in acts constituting doing business in the State of New York and have intentionally directed their tortuous [sic] activities towards this state, including, sales of the product bearing the trademark "Zylast" intermingled with the trademark "Zytrel" and "Zytrel XP" and have transacted business in connection with the aformentionied trademarks, trade names, corporate names and domain names within the state and they have veiled [sic] themselves to the jurisdiction of this court by instituting the cause of action herein as plaintiffs.

(VSP Litigation, Amended Answer with Counterclaims, Dkt. #36, ¶80, attached as **Exhibit 1** to the Declaration of James D. Arden ("Arden Decl.")).

VSP's third cause of action against IBD and Cozean states a claim for unfair competition and false advertising under the Lanham Act relating to IBD's marketing of Zylast® products as causing confusion with VSP's Zytrel products and using VSP's technology and know-how.  (*Id*. at ¶¶107-17.)  VSP also alleges causes of action for unfair competition under New York law and a violation of New York General Business Law § 349 for unfair business practices.  (*Id*. at ¶¶123-34.) These claims are similar to claims alleged by GOJO in its Complaint for violations of the Lanham Act and New York business law relating to false advertising and unfair business practices involving Zylast® products.[3]

Moreover, the deposition of IBD president and CEO, Colette Cozean, in the VSP Litigation occurred in White Plains, New York.  (*See* **Exhibit 2** to Arden Decl., cover page from Cozean deposition transcript in VSP Litigation, Dkt. #190-19.)  Likewise, another key witness in this case (as he is in the VSP Litigation) will be Dr. Cozean's "business partner,"[4] Gary Klein, IBD's Executive Vice Chair, Chief Operating Officer, and Vice President of International Sales.

---

[3] IBD also sought to minimize its New York contacts in arguing for the application of California law to the counterclaims asserted in the VSP lawsuit.  Judge Ramos rejected IBD's argument and held, without regard to the choice of law provision in the license agreement, that "New York clearly has the most significant contacts with the dispute and its law should therefore be applied" to VSP's tort counterclaims against IBD.  *Innovative BioDefense, Inc. v. VSP Techs., Inc*., No. 12 Civ. 3710, 2013 WL 3389008, at *6 (S.D.N.Y. July 3, 2013).

[4] In her declaration filed in the VSP Litigation, Colette Cozean describes Gary Klein as her "business partner" in IBD.  (*See* **Exhibit 5** to Arden Decl., Cozean Declaration in VSP Litigation, Dkt. #19, ¶3.)

Mr. Klein resides in New York and is also the president of International Specialty Chemicals & Pharmaceuticals, Inc. located in Tarrytown, New York.  (*See* **Exhibit 3** to Arden Decl., Klein Declaration in VSP Litigation, Dkt. #176, ¶1.)  Mr. Klein's declaration (filed just a few months ago) describes IBD's business in New York, including its attempt to have its Zylast® products manufactured in New York.  It is certainly likely that Mr. Klein possesses intimate knowledge of IBD's business opportunities and product development that will be important in challenging IBD's allegations that its advertisements are true and that its studies are reliable.  Mr. Klein's deposition has been requested.

Finally, there is no dispute that IBD is and has been registered to do business with the New York Department of State as a foreign corporation.  (*See* **Exhibit 6** to Arden Decl.)  The Division of Corporations lists IBD's address for service of process in New York at 250 West Nyack Road, Suite 210, West Nyack, NY 10994, which appears to be an industrial complex with several tenants.  At least three lawsuits have been filed against IBD in the Rockland County, New York, Supreme Court.  (*See* **Exhibit 7** to Arden Decl.)  It does not appear that IBD has challenged jurisdiction over it in these cases.

As to the convenience for GOJO, it would be much more convenient for it to litigate this matter in New York.  The GOJO representative who discovered the wrongful conduct directed toward New York customers resides in Maryland and his sales territory includes New York.  The GOJO employees most knowledgeable about the scientific issues in the case are located in Akron, Ohio.  It is much more convenient for these individuals to travel from Ohio to New York, rather than from Ohio to California.  There are many direct flights available from Cleveland to the airports in the New York metropolitan area (LaGuardia, JFK, Newark), each of which is approximately an hour in length.  By contrast, there are very few direct flights from Cleveland to

John Wayne Airport in Orange County, CA, which is the airport in closest proximity to IBD's offices and its counsel's offices, or to Los Angeles International Airport, which would require essentially an entire day of travel.  It is well-settled that "transfer of venue should not merely shift the burden of inconvenience from one party to the other."  *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000).

In sum, it has not been inconvenient for IBD to litigate in this Court for the last three years; accordingly, it should not be inconvenient for IBD to continue to litigate this matter in this Court.  This Court is also a much more convenient forum for GOJO.  This factor weighs against transfer.

> **2.    Most of the Material Witnesses Are Located Closer to New York than California.**

IBD argues that the vast majority of witnesses in this case are located in California. However, most of the witnesses identified by IBD as potentially having discoverable knowledge are not likely to be witnesses at trial.  "In considering the convenience of witnesses, the Court should 'not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum.  Instead the Court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.'"  *Neil Bros., Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (quoting *Herbert Ltd. P'ship v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)).

At this early stage, it appears that the most pertinent fact witnesses in this case will be: (1) IBD representatives Colette Cozean, Jesse Cozean,[5] Steve Czerwinski (IBD's regulatory specialist and author of Zylast® studies, located in Florida), Gary Klein (located in New York),

---

[5] The depositions of Colette Cozean and Jesse Cozean have been scheduled for July 7-8 in Irvine, California.

and Richard Ajayi (IBD's CFO, located in Florida);[6] (2) Aquarius representatives Dan Putalik (located in New York) and Ellis Malovany (located in New York); (3) Allen & Caron, Inc., an advertising firm with offices in New York and California; (4) representatives of the U.S. Food and Drug Administration ("FDA") located in Maryland or other government agencies such as USAID (located in Washington, D.C.); (5) the 50 to 60 individuals in New York and the tri-state area that received false and misleading communications from Aquarius and IBD regarding Zylast® products; and (6) the GOJO employees most knowledgeable about GOJO's claims and IBD's counterclaims (located mostly in Ohio).  Most of these witnesses are located on the East Coast or reside much closer to New York than California, and they will account for the vast majority of material testimony in this case.

Additionally, it may be necessary to call witnesses from Columbia University to testify about the truth or falsity of IBD's product claims regarding Zylast®.  In a declaration filed on May 21, 2015 in the VSP Litigation, Colette Cozean states that she "worked with Columbia's attorneys to ensure that the data for Zylast was accurate, and Columbia ultimately approved of IBD's references to the data and articles."  (*See* **Exhibit 8** to Arden Decl., Cozean Decl. in VSP Litigation, Dkt. #198, ¶25.)  Since it is believed that the Zylast® technology is based on technology developed and patented by Columbia scientists, it is quite likely that these individuals will have relevant and important information concerning the issues in this case.

IBD claims that the issue of Aquarius's communications with customers in New York has been resolved.  (IBD Br. at 12, Dkt. #52.)  However, this is not true as IBD continues to direct false and misleading statements to these customers.  For example, as part of its curative notification to these customers pursuant to the agreed injunction, Aquarius distributed a document dated May 1, 2015 on IBD letterhead that is littered with false and misleading

---

[6]  *See* **Exhibit 12** to Arden Decl. at 2.

statements concerning Zylast®, PURELL® Sanitizer, and the status of the claims in this lawsuit. (*See* Dkt. #47 at 7-8, attached to Arden Decl. as **Exhibit 9**.)  Also distributed was a document entitled "CDC Guidelines for Hand Hygiene," which includes further false and misleading comparative statements concerning Zylast® and PURELL® Sanitizer.  (*Id*. at 9-10.)  These false and misleading advertisements were purposefully directed to numerous individuals in the Southern District of New York; thus, these individuals are necessary and important witnesses in this action.

Finally, to the extent IBD has identified persons or entities with knowledge who are located in California, GOJO has served document subpoenas on these persons and entities in an attempt to discover the extent of their knowledge.  However, IBD is obstructing those efforts by objecting to every single subpoena and the document requests included therein.  (*See* **Exhibits 10 and 11** to Arden Decl.)  To date, GOJO has received only a few documents in response to these subpoenas.  Until these documents can be obtained and reviewed, the issue of which if any of these witnesses may be material is merely speculative.

In sum, while some witnesses are located in California, the most material witness testimony in this case is likely to come from individuals much closer to New York than California.  This factor is, at best for IBD, neutral.

3.     **IBD Has the Financial Means to Litigate In New York.**

IBD alleges that it would be inconvenient for it to litigate in New York because it is "a small company . . . with sales figures in the low six figures."  (IBD Br. at 15, Dkt #52.)

However, these contentions are belied by the publicly available information regarding IBD and its actions in the VSP Litigation.[7]

IBD has failed to meet its evidentiary burden on this factor.  "A party arguing for or against transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances."  *Neil Bros., Ltd.*, 425 F. Supp. 2d at 331.  IBD offers only the conclusory statements of its president and CEO, Colette Cozean, that IBD lacks financial means.  This, however, is not enough to support IBD's allegations.  *See Pecorino*, 934 F. Supp. 2d at 439 ("This argument is weakened, however, because Vutec offers no documentation beyond declarations demonstrating that it would be prohibitively expensive for Vutec to prosecute in the current district."); *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 329 (E.D.N.Y. 2010) ("Other than conclusory allegations in his affidavit, [defendant] has not produced documentation that litigating the case in [Florida] – as compared to New York – would be prohibitively expensive.").

Moreover, IBD has prepared an Investor Brief that is publicly available on the website of Allen & Caron, Inc. and includes numerous representations as to IBD's success in the market and financial well-being.  (*See* **Exhibit 12** to Arden Decl.)  For instance, the document states that in November 2014, IBD "[s]igned contracts for more than $100 million in future sales."  (*Id.*)  Further, IBD represents that "[s]ales have increased to more than $100 million in booked sales, and the company believes revenues in 2015 will easily surpass $40 million and increase to more than $90 million in 2016 with only current order volumes."  (*Id.*)  IBD states that it has raised $6.8 million in capital with projected revenue of $44 million by June 2015.

---

[7] "Although the Court can consider the relative means of parties, this factor is not entitled to great weight where plaintiff and defendant are both corporations."  *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998).

In addition, on March 25, 2015, IBD filed a Form D with the U.S. Securities and Exchange Commission ("SEC") disclosing an equity sale of $350,000 to an undisclosed entity. (*See* **Exhibit 13** to Arden Decl.) IBD further represents in this document that its total offering amount is $4,275,000.

Lastly, a review of the docket in the VSP Litigation shows that this matter has been litigated aggressively by IBD for over three years. IBD has retained large firms in both New York and California to represent its interests in that case. Similarly, IBD has retained firms in both New York and California to represent it in this case and has aggressively litigated this matter, including sending 101 document requests to GOJO, writing multiple letters objecting to GOJO's discovery requests and subpoenas, and alleging counterclaims.

In sum, IBD's attempts to plead poverty should fall on deaf ears. IBD's public filings and documents paint a very different picture of a competitor who has significant financial means and the ability to litigate this matter in New York without inconvenience or hardship.

### 4. The Wrongful Conduct That Led to this Lawsuit Occurred in This District.

"The locus of operative facts . . . is a 'primary factor' in a motion to transfer venue." *Fuji Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) (citing *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000)). "In determining the locus of operative facts a court must look to the site of events from which the claim arises." *Pecorino*, 934 F. Supp. 2d at 440. This includes consideration of the relative ease of access to the sources of proof. *Id*.

As explained above, the wrongs that led to this lawsuit occurred in New York, not California. These include the false and misleading statements made by IBD and Aquarius to potential customers (including current GOJO customers) in New York. This wrongful conduct has not abated and, in fact, has continued since the filing of this lawsuit. (*See, e.g.*, Dkt. #47,

**Exhibit 9** to Arden Decl.)  To date, GOJO is unaware of any similar false advertising targeted specifically at customers in California.

As to the location of relevant documents, in this age of technology, most courts recognize that documentary evidence is easily and inexpensively exchanged and reproduced between parties throughout the country, regardless of where the original documents are located.  *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).  The location and cost of production have, at best, become neutral in light of the availability and ease of the electronic transfer of documents from one locale to another.  *Id.*; *ESPN, Inc.*, 581 F. Supp. 2d at 548 ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

### 5.      GOJO's Choice of Forum Should Be Entitled to Deference.

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer."  *Neil Bros., Ltd.*, 425 F. Supp. 2d at 333.  Even though this District is not GOJO's home forum, GOJO's choice of forum is entitled to deference so long as there is "some material relation" to this District and "there is ongoing business activity" in this forum.  *See Research Found. of N.Y. v. Luminex Corp.*, No. 07 Civ. 1260, 2008 WL 4822276, at *8 (N.D.N.Y. Nov. 3, 2008); *Kiss My Face Corp. v. Bunting*, No. 02 Civ. 2645, 2003 WL 22244587, at *4 (S.D.N.Y Sept. 30, 2003).

As explained above, the wrongful conduct that led to this lawsuit occurred in this District and has continued even after Aquarius's dismissal as a defendant.[8]  Moreover, there is no dispute that both GOJO and IBD conduct ongoing business activity in New York.  Thus, GOJO's choice of forum should be entitled to some deference.

---

[8] Upon the entry of the permanent injunction against Aquarius, GOJO agreed to a dismissal as to Aquarius "without prejudice," with full rights to renew its claims against Aquarius in this Court.

6.      **This Court Is Familiar with the Governing Law.**

IBD suggests that the California courts are somehow more familiar with the law relative to this case than this Court.  This is untrue.  The Lanham Act is a federal statute and, thus, any federal court is competent to resolve matters brought under it.  Similarly, this is not a case involving complex questions of foreign law.  GOJO's Complaint, in addition to alleging claims under the Lanham Act, alleges violations of New York General Business Laws and New York common law.  IBD's Counterclaims attempt to mirror GOJO's claims but instead allege violations of California law.  These state statutes are essentially the same and are all related to the Lanham Act.  *See ESPN, Inc.*, 581 F. Supp. 2d at 551 (citing *Am. Eagle Outfitters, Inc.*, 457 F. Supp. 2d at 479 (where state law claims were related to the Lanham Act, the factor did not warrant transfer of venue)).  It appears that IBD's only reason for alleging violations of California law is to aid in its attempt to have this case transferred.[9]  IBD does not identify a single customer in California (or anywhere else for that matter) who was targeted or misled by any alleged wrongful act by GOJO.  Accordingly, this factor weighs against transfer.  *See, e.g., ESPN, Inc.*, 581 F. Supp. 2d at 551 (both this Court and the Central District of California "are familiar with federal copyright law and have substantial experience applying it"); *Research Found.*, 2008 WL 4822276, at *7 ("It is also undisputed that federal courts should not be overly concerned with which state law is applicable when deciding a motion to transfer venue." (internal quotations omitted)).

7.      **Judicial Efficiency Weighs Against Transfer to California.**

"The interest of justice has been deemed the most important transfer factor."  *Research Found.*, 2008 WL 4822276, at *8 (quoting *Race Safe Sys., Inc. v. Indy Racing League*, 251 F.

---

[9] IBD contends that its advertisements and product claims cited in GOJO's Complaint occurred in California, thus making California a more appropriate forum.  However, if IBD's reasoning were to be applied, the actions that form the basis of IBD's counterclaims occurred in Ohio, not California.

Supp. 2d 1106, 1111 (N.D.N.Y. 2003)).  This Court is already quite familiar with this action, having heard the parties on GOJO's motion for temporary restraining order and preliminary injunction and issuing two injunctions.  This Court has also issued its Case Management Plan and Scheduling Order (Dkt. #31), which would be frustrated if this matter were to be transferred. In addition, discovery has commenced with the parties exchanging written discovery requests and depositions scheduled.  Several third-party subpoenas have been issued under the authority of this Court.  It is a virtual certainty that this matter could be resolved most efficiently in this Court under the current case schedule.

Moreover, IBD contends that it would be burdensome for this Court to enforce any final injunction issued in this case.  (IBD Brief, Dkt. #52-1, at 18.)  There is no support for such a statement.  This Court is fully capable of enforcing its orders against the parties before it, regardless of where the parties are located or where the contemptuous conduct may occur.

## Conclusion

The wrongs that led to this lawsuit occurred in the Southern District of New York.  Those wrongs are continuing in this District, and the individuals and entities who can testify about them are located in this District.  Moreover, the Central District of California is not a court in which this case could have been brought at the time of filing because Aquarius is not subject to jurisdiction there.  IBD's contentions regarding its alleged inconvenience and poor financial means are unavailing.  This Court is already quite familiar with this case, and it would frustrate the purposes of judicial economy to transfer it to California.

Accordingly, GOJO respectfully requests that this Court deny IBD's motion to transfer venue to the Central District of California.

Date:  June 19, 2015                     Respectfully submitted,

                                         By: /s/ James D. Arden
                                         James D. Arden
                                         SIDLEY AUSTIN LLP
                                         787 Seventh Avenue
                                         New York, NY  10019
                                         Phone:  (212) 839-5889
                                         Fax:  (212) 839-5599
                                         Email:  jarden@sidley.com


                                         Mark J. Skakun, Ohio Bar #0023475
                                         Justin S. Greenfelder, Ohio Bar #0077924
                                         (admitted pro hac vice)
                                         BUCKINGHAM, DOOLITTLE
                                             & BURROUGHS, LLC
                                         4518 Fulton Drive, N.W., Suite 200
                                         P.O. Box 35548
                                         Canton, Ohio  44735-5548
                                         Phone: (330) 492-8717
                                         Fax:    (330) 492-9625
                                         Email: MSkakun@bdblaw.com
                                                 JGreenfelder@bdblaw.com

                                         *Attorneys for Plaintiff*
                                         *GOJO Industries, Inc.*

17