**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GOJO INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE BIODEFENSE, INC.; and AQUARIUS GLOBAL ENERGY PARTNERS, LLC, <br><br> Defendants. | Case No. 15-cv-2946 (PAC) <br><br> **DEFENDANT INNOVATIVE BIODEFENSE, INC.'S REPLY IN SUPPORT OF MOTION FOR CHANGE OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |

## TABLE OF CONTENTS
Page

I.   INTRODUCTION ...........................................................................................................1

II.  THIS ACTION MAY HAVE BEEN BROUGHT IN CALIFORNIA ................................1

III. CONVENIENCE AND FAIRNESS REQUIRE THE TRANSFER OF THIS CASE ........................................................................................................................3

   A. Gojo Cannot Relate This Action to the Separate VSP Litigation. ..........................3

   B. Gojo's Claim That There Are More East Coast Witnesses is Unavailing. ..............4

   C. Gojo Cannot Use Projected Sales to Show That IBD Has Financial Means. ..........6

   D. The Situs of the Operative Events Occurred in California. .....................................7

   E. That Some of the Operative Facts Took Place in New York is Entitled Only to Minimal Consideration. ...........................................................................................8

   F. The Central District of California is Familiar with the Relevant Law. ...................8

   G. Judicial Efficiency Weighs For Transfer to California. ...........................................9

IV.  CONCLUSION.............................................................................................................10

i

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Amick v. Am. Exp. Travel Related Servs. Co.*,
   No. 09CIV9780AKH, 2010 WL 307579 (S.D.N.Y. Jan. 26, 2010) ......................................... 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................................ 2

*Doctor's Assocs., Inc. v. Stuart*,
   85 F.3d 975 (2nd Cir. 1996) ................................................................................................. 2

*ESPN, Inc. v. Quiksilver, Inc.*,
   581 F. Supp. 2d 542 (S.D.N.Y. 2008) .................................................................................. 9

*Hall v. South Orange*,
   89 F.Supp.2d 488 (S.D.N.Y.2000) ...................................................................................... 8

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945) ............................................................................................................ 2

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011) ........................................................................................................ 2

*Law Bulletin Pub., Co. v. LRP Publications, Inc.*,
   992 F. Supp. 1014 (N.D. Ill. 1998) .................................................................................... 10

*Lent v. Signature Truck Sys., Inc.*,
   No. 06CV569S, 2010 WL 1707998 (W.D.N.Y. Apr. 26, 2010) ......................................... 10

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................................................ 2

*McNerney v. Archer Daniels Midland Co.*,
   164 F.R.D. 584 (W.D.N.Y. 1995) ..................................................................................... 10

*Pennoyer v. Neff*,
   95 U.S. 714 (1877) .............................................................................................................. 2

*Posven, C.A. v. Liberty Mutual Insurance Co.*,
   303 F.Supp.2d 391 (S.D.N.Y. 2004) ................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

*Rocke v. Canadian Auto. Sport Club*,
  660 F.2d 395 (9th Cir. 1981) ...................................................................................................2

*Sheet Metal Workers' Nat. Pension Fund v. Gallagher*,
  669 F.Supp. 88 (S.D.N.Y.1987)...............................................................................................8

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)................................................................................................................9

**OTHER STATUTES**

California Code of Civil Procedure § 410.10 ...............................................................................2

I. **INTRODUCTION**

IBD's moving papers established a litany of compelling reasons why this Court should transfer this matter to the Central District of California. Gojo's argument that a section 1404(a) motion is not proper because the Central District is not a forum where this matter could have been brought, along with its other arguments in opposition to IBD's motion, have no merit.

There is no reasonable dispute that Aquarius is subject to jurisdiction in California under the state's long-arm statute. Here, the evidence shows that Aquarius consented to jurisdiction in California by agreeing to introduce customers to IBD's products and by signing a Finders Agreement with IBD. Most of the other "facts" that Gojo refers to in the opposition are simply false and misleading attempts to confuse the Court: (1) the VSP litigation does not involve similar issues and witnesses; (2) IBD does not have an address in New York; (3) Columbia University will not be a witness in this case; (4) there will not be "50-60" East Coast witnesses; (5) IBD's projected booked orders does not show IBD's revenue; and (6) Aquarius's e-mails regarding FDA approval do not form the gravamen of Gojo's lawsuit.

IBD has met its burden to show that convenience and fairness require transfer, and the Court should transfer this action to the Central District in accord with IBD's motion.

II. **THIS ACTION MAY HAVE BEEN BROUGHT IN CALIFORNIA**

Gojo's argument that a venue change is improper because this matter may not have been brought in California is based on a single, flawed assumption – that Aquarius is not subject to personal jurisdiction in California. For Gojo to assume that Aquarius cannot be subject to jurisdiction, seemingly ignores the evidence that was submitted in support of IBD's motion as well as black-letter law. Here, Aquarius consented to jurisdiction in California by agreeing to introduce customers to IBD's products and by signing the Finders Agreement with IBD which included a California law and forum selection clause. (*See* Declaration of Colette Cozean, Exh.

1

"A," p. 8, § 13.3).  Gojo's argument is particularly disingenuous since its primary argument to impute IBD's liability for Aquarius's conduct rests upon the claim that Aquarius was acting as IBD's agent under the Finder's Agreement when it contacted potential customers in a manner that violated the Lanham Act.  Gojo cannot have it both ways.

There is no dispute that Aquarius is subject to jurisdiction under California's long-arm statute, California Code of Civil Procedure section 410.10, which provides for jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States."  The effect of the statute is to allow courts in California to exercise personal jurisdiction on any basis allowable under the U.S. Constitution, *i.e.*, to the outer limits of constitutional due process. *Rocke v. Canadian Auto. Sport Club*, 660 F.2d 395, 398 (9th Cir. 1981).

The fact that Aquarius is subject to personal jurisdiction in California should be obvious.  Consent is one of the oldest bases for the exercise of personal jurisdiction.[1]  *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011).  This traditional basis supports the exercise of general jurisdiction, allowing the court to resolve both matters that originate within the state and those based on activities elsewhere.  *Nicastro*, 131 S. Ct. at 2787.  While modern cases would also recognize Aquarius's minimum contacts with California as a basis for jurisdiction (*see e.g.*, *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945)), minimum contacts are not required when a traditional jurisdictional basis is present.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 fn. 14 (1985).

The evidence shows that Aquarius consented to jurisdiction in California.  Indeed, neither

---

[1] Moreover, a consent to arbitrate in a particular jurisdiction is a consent not only to personal jurisdiction but also to venue of the courts within that jurisdiction.  *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2nd Cir. 1996) citing *Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S.A.*, 243 F.2d 342, 346 (2d Cir.1957).

2

IBD nor Aquarius dispute this, and Gojo is the only party who assumes (without any evidence) that this matter could not have been brought in California. The assumption is flawed, since personal jurisdiction over Aquarius in California meets all of the constitutional requirements.

### III.   CONVENIENCE AND FAIRNESS REQUIRE THE TRANSFER OF THIS CASE

#### A.   Gojo Cannot Relate This Action to the Separate VSP Litigation.

Gojo continues to mischaracterize the separate VSP litigation to suggest that venue in New York will not be burdensome for IBD. Here, the Court should question how Gojo can claim that the VSP litigation involves "similar issues" and "the same witnesses" when it has never been a party to the litigation and is in the dark regarding the procedural history.

The VSP litigation is a contract case having primarily to do with VSP's failure to provide "know-how," patents, and trademarks. IBD did not make an "informed choice" to license IP rights developed in New York; rather, the litigation arose out of IBD's acquisition of all the assets of a New York company. Of the three litigations referenced by Gojo, two were combined into the VSP litigation, and one is in arbitration in California.

Gojo's claim that VSP's counterclaim involves similar claims also coincidentally leaves out one crucial detail – VSP has in fact abandoned the very counterclaims that Gojo cites. In his declaration supporting VSP's opposition to summary judgment, counsel for VSP, Richard Corde, declared: "VSP and Micceri discontinue the third, fourth, fifth, sixth, seventh, eighth and ninth causes of action contained within their counterclaims against IBD ..." (Declaration of Robert Matsuishi, Exh. "A," ¶ 5.) These are the very same claims by VSP that Gojo relies upon to assert that this action and the VSP lawsuit involve similar issues and witnesses.

Also suspect is Gojo's suggestion that Gary Klein will be an important witnesses in this case. There is no indication that he will be. For one, Mr. Klein is not involved in the advertising or marketing of IBD's products, which forms the basis of this action. (Supplemental Declaration

3

of Colette Cozean, ¶ 4.)  The fact that Mr. Klein <u>attempted</u> to source New York manufacturers for IBD also has absolutely no bearing on IBD's convenience with litigating this matter in New York.  Taking Gojo's argument to its logical conclusion, California, Florida, Maryland, and North Carolina would be convenient locales for litigation since they are all places where IBD has also attempted to source manufacturing.

Another fact that has no bearing on IBD's convenience, is the fact that the company from whom IBD acquired its assets is listed with an address in West Nyack.  While Gojo claims that having an address in New York *ipso facto* means there is no inconvenience to IBD, it is undisputed that IBD does <u>not</u> have, and has <u>never</u> had, an address in New York.  (Supp. Cozean Decl., ¶ 5.)  IBD has <u>never</u> had a lease for a facility in New York, and <u>never</u> acquired a lease from the former company.  (*Id*.)  This fact is simply another of Gojo's red-herrings.

      **B.**      <u>**Gojo's Claim That There Are More East Coast Witnesses is Unavailing.**</u>

IBD's motion identified at least 14 California witnesses who will be severely inconvenienced if this matter goes forward in New York.  IBD also explained the substance of their testimonies, and noted that many of the witnesses have indicated that they cannot appear at trial in New York.  Gojo's conclusory response, which fails to provide <u>any</u> explanation, is telling: "most of the witnesses identified by IBD as potentially having discoverable knowledge are not likely to be witnesses at trial."

Here, Gojo's argument that there are more East Coast witnesses is unavailing.  First, while Gojo admits that the Court should consider the substance of the witnesses' testimony with respect to the issues of the case, Gojo provides almost no information regarding the testimony of its East Coast witnesses.  For example, Gojo doesn't even try to explain why this case will require the testimony of the FDA and "other government agencies."  An FDA representative is not necessary to show that it doesn't "approve" sanitizer products.  As for the "other government

agencies," IBD cannot speculate regarding their identities or why their testimony is necessary.

Second, Gojo's claim that Columbia University may have relevant information is another flawed assumption. Apart from asserting that Columbia knows the technology, Gojo once again fails to explain the nature and quality of the school's testimony. Gojo also fails to show that there is any connection between the advertisements in this case and Columbia's data and articles that were at issue in the VSP litigation. In fact, Gojo <u>never</u> identified Columbia University as an entity likely to have discoverable information in discovery or its Rule 26(A)(1) disclosures.

Third, Gojo alleges that its claims concerning Aquarius's e-mails would still involve "50-60" East Coast witnesses because Aquarius's corrective notice to IBD's customers to correct its prior representations regarding FDA approval contained misrepresentations, and is evidence that IBD's and Aquarius's alleged wrongdoing continues towards New York residents. Once again, Gojo relies on conclusory claims, and fails to identify any of these witnesses, explain how the corrective notice was a further false advertisement, or explain the nature and quality of the witness testimony. Gojo also fails to explain why it has not subpoenaed any of these witnesses if their testimony is important. Gojo doesn't refute the admission by Aquarius's Managing Director that none of the New York residents actually purchased IBD's products. Further, Gojo still fails to explain why the testimony of each of these "50-60 individuals" is necessary when Aquarius has already admitted that it sent the e-mails concerning FDA approval.

Lastly, Gojo's argument that it can only speculate about the testimony of the California witnesses ignores common sense. Gojo does not need to refer to a document produced by a third party to logically conclude that a California-based corporate communications firm, PR firm, or marketing firm that was identified by IBD may have information that is material to allegations concerning Gojo's false advertising claims. Further, any delay in obtaining the subpoenaed documents from any of the California witnesses is a delay of Gojo's own making. Gojo, not

5

IBD, prepared subpoenas which were overbroad, sought irrelevant information, and improperly sought confidential, trade secret information concerning IBD.  Gojo, not IBD, refused to compromise in meet and confer efforts to narrow the scope of the subpoenas, and IBD was forced to seek the Court's assistance.

> C. **Gojo Cannot Use Projected Sales to Show That IBD Has Financial Means.**

Gojo's reliance on random 'tid-bits' in public disclosures regarding IBD's projected sales and the issuance of private investments does not change the fact that IBD is a small, privately held startup, that had annual sales in the low six figures in 2014.[2]

Gojo cannot use IBD's Investor Brief to presuppose IBD's overall financial position. While all investor relations documents provide an account of the company's affairs to assist in investment decisions, it is understood (and expressly stated) that the documents contain forward-looking statements about assumptions, prior year corresponding period, estimates and outcomes. The representations that Gojo cites reflect IBD's booked orders, not revenue.  Generating actual revenue requires the fulfillment of transactions.  At a minimum, Gojo's arguments show a misunderstanding of general accounting principles.  At worst, it is a bold attempt to misrepresent IBD's financial position.

IBD also questions how the filing of a Form D (which doesn't make any representations about revenues) can evidence IBD's overall financial position.  Form D is an SEC filing used to file a notice of an exempt securities offering.  In fact, Regulation D offerings are commonly used for investments in small, growing companies like IBD.  The Form D identified by Gojo doesn't show IBD's debt, its operational expenses, or its revenues.

---

[2] It is curious that in 2009, Gojo, the self-proclaimed maker of "America's #1 instant hand sanitizer and a nationally-recognized brand" in this case (Complaint, ¶ 10), represented itself to the U.S. District Court for the Northern District of Ohio as a "small company" who "doesn't have the economic resources to fight 3M in the marketplace."  (Matsuishi Decl., Exh. "B," p.101:20-23.)

Gojo's arguments also fail to account for the fact that its false and misleading advertising to IBD's customers concerning Zylast and this litigation, has already resulted in a significant downturn (80-90%) in revenues during the current fiscal quarter. (Supp. Cozean Decl., ¶ 6.) IBD currently has approximately $55,000 in liquid cash assets.[3] (*Id.*)

### D. The Situs of the Operative Events Occurred in California.

Rather than admitting that the gravamen of this action involves online ads that were created in California, Gojo is adamant that Aquarius's e-mails to IBD's customers regarding FDA approval forms the basis of Gojo's lawsuit. This argument is misleading.

As discussed at length in IBD's motion, the gravamen of this action concerns allegedly false online advertisements that IBD formulated and created in California based on data generated primarily in California. (*See* Compl., ¶ 34.) Specifically, Gojo's challenges as literally false certain "establishment claims" that Gojo's Motion for Preliminary Injunction segregated into four categories: (1) statements challenging the safety of alcohol-based sanitizers; (2) claims that alcohol-based sanitizers do not effectively kill important germs, bacteria, and viruses; (3) claims that alcohol-based sanitizers are not effective in reducing illness in schools or hospital-acquired infections; and (4) claims that alcohol-based sanitizers damage the skin and hands. (*See* Dkt. No. 11, pp.15-18; Dkt. No. 12, Exh. 1.) Gojo also alleges that Aquarius, as IBD's agent, sent e-mails to customers which claimed that IBD's products were approved by the FDA. (*See* Dkt. No. 11, p.13; Dkt. No. 14, ¶¶ 15-17, Exh. 2.)

It is disingenuous for Gojo to rely on Aquarius's e-mails regarding FDA approval to claim that the wrongs that led to this lawsuit occurred in New York. In fact, Gojo's Opposition

---

[3] IBD is more than willing to provide further evidence of its financial condition for an in-camera inspection by the Court should it be necessary.

fails to examine any of the other advertisements that are at issue. Gojo fails to explain why, if Aquarius's e-mails regarding FDA approval form the basis of the lawsuit, Gojo did not withdraw its Motion for Preliminary Injunction when both IBD and Aquarius agreed to a stipulated injunction to cease all representations which claimed that IBD's products were FDA approved. Gojo also fails to explain why, of the 37 advertisements that Gojo challenges, only two of the advertisements concern representations regarding FDA approval. (*See* Compl., ¶¶ 35, 38.) The only explanation for Gojo's intransigence is its awareness that Aquarius's e-mails is the <u>only</u> conduct that tethers this matter to New York. With Aquarius's dismissal from this action, this district has a minimal interest in this matter.

### E. That Some of the Operative Facts Took Place in New York is Entitled Only to Minimal Consideration.

Gojo fails to explain how the wrongful conduct that led to this lawsuit occurred in this district when the evidence is overwhelming that this case is about allegedly false online advertisements that IBD formulated and created in California. Gojo also fails to distinguish the litany of authorities which hold that Gojo's decision to bring this action in the Southern District is accorded a lesser degree of deference when the action is minimally connected with the district. *See Amick v. Am. Exp. Travel Related Servs. Co.*, No. 09CIV9780AKH, 2010 WL 307579, at *3 (S.D.N.Y. Jan. 26, 2010); *see also Hall v. South Orange,* 89 F.Supp.2d 488, 494 (S.D.N.Y.2000); *Sheet Metal Workers' Nat. Pension Fund v. Gallagher,* 669 F.Supp. 88, 93 (S.D.N.Y.1987). In light of the other factors weighing in favor of a transfer, Gojo's claims that some of the operative facts took place in New York is entitled only to minimal consideration.

### F. The Central District of California is Familiar with the Relevant Law.

IBD does not dispute that this district and the Central District are familiar and experienced with the Lanham Act. IBD never proclaimed, as Gojo suggests, that venue in

8

California is proper because the Central District is better at understanding federal laws.[4]  In fact, IBD recognizes that a forum's familiarity with the governing law "is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."  *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 550-51 (S.D.N.Y. 2008) citing *Posven, C.A. v. Liberty Mutual Insurance Co.,* 303 F.Supp.2d 391, 405 (S.D.N.Y. 2004).  But it is still a factor for a section 1404(a) motion.  If Aquarius's relationship with IBD is at issue, Gojo cannot dispute that a California court is more familiar with California agency and contract law and is best equipped to examine the issues.

### G.  Judicial Efficiency Weighs For Transfer to California.

That judicial economy is a factor that the Court should examine in a section 1404(a) motion is not disputed.  For example, courts should consider whether transfer will avoid duplicative litigation.  *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  In *Posven*, this court determined that the ability to implead a third party in the transferee forum and thereby resolve related claims in a single action weighed in favor of transfer.  *Posven,* 303 F.Supp.2d at 406.  But there are no other related matters in this case, whereby a consolidation would affect judicial economy.  The three reasons that Gojo cites to suggest that judicial economy would be best served by denying the motion are red-herrings that should be discounted.

First, that discovery has commenced and depositions have been scheduled does not impact judicial economy.  No motions have been filed related to party discovery or depositions, and Gojo fails to explain how the fact that discovery and depositions (to take place in California) are pending is related to judicial economy in any way.  Second, since trial has not been

---

[4] It is also confusing why Gojo would claim that the only reason IBD included California claims in its counter-claim is "to aid in its attempt to have this case transferred."  IBD never argued in its motion that this action should be transferred because the counter-claim asserts violations of California law.  Thus, it appears that Gojo's argument is yet another red-herring that is meant to take away from the primary issues in the motion.

scheduled, there is no reason that a California court can't simply adopt the parties' Case Management Plan and Scheduling Order.  At most, the parties will meet and confer to present another Case Management Plan and Scheduling Order for the court in California.

The third reason that Gojo cites to suggest that judicial economy would be served by denying the motion – Gojo's issuance of third party subpoenas – actually supports the argument that judicial economy would be best served by transferring this matter.  Here, Gojo's subpoenas are jurisdictionally invalid because they were issued in New York and requested documents from California witnesses.  *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y. 1995); *Lent v. Signature Truck Sys., Inc.*, No. 06CV569S, 2010 WL 1707998, at *5 (W.D.N.Y. Apr. 26, 2010).  Thus, if Gojo seeks to compel the production of documents, they would require subpoenas issued by the Central District and would require Gojo to seek relief from that court should a motion to compel be necessary.

Lastly, Gojo's suggestion that the enforcement of any final injunction in this case would not be burdensome ignores the obvious.  Here, Gojo seeks an injunction concerning the marketing by a California company that is created and conducted in California.  Gojo does not dispute that where injunctive relief is sought, it is important to consider whether one court will be "closer to the action" and better able to monitor compliance.  *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1020-21 (N.D. Ill. 1998).  If Gojo's prior lawsuits against competitors is any indication of what the future holds; any stipulated injunction will include a demand by Gojo that the injunction include post-injunction hearings to ensure compliance.  This is the burden that the Court and IBD may face at the conclusion of this matter.

## IV.     CONCLUSION

In accord with IBD's motion, the Court should transfer this action to the Central District of California.

DATED: June 24, 2015                    Respectfully submitted,

                                        By: _____
                                        Adam K. Kurland, NY Bar No. 2659837
                                        FENSTER & KURLAND LLP
                                        337 North Main St., Suite 11
                                        New City, New York, 10956
                                        Telephone: (845) 638-4700
                                        Facsimile: (845) 638-4767
                                        E-mail: akurland@fkllp.com

                                        Benjamin A. Nix, *Admitted Pro Hac Vice*
                                        Robert T. Matsuishi, *Admitted Pro Hac Vice*
                                        PAYNE & FEARS LLP
                                        4 Park Plaza, Suite 1100
                                        Irvine, California 92614
                                        Telephone: (949) 851-1100
                                        Facsimile: (949) 851-1212
                                        E-mail: ban@paynefears.com,
                                        rtm@paynefears.com

                                        Attorneys for Defendant Innovative Biodefense, Inc.

4827-7575-6069.1