# PAYNE & FEARS

4 Park Plaza, Suite 1100
Irvine, CA 92614
T 949.851.1100
F 949.851.1212

Benjamin A. Nix
(949) 797-1249
ban@paynefears.com

July 8, 2015

***VIA ECF***

The Honorable Paul A. Crotty
United States District Court
Southern District of New York
500 Pearl Street, Chambers 1350
New York, New York 10007

Re:   <u>*Gojo Industries, Inc. v. Innovative Biodefense, Inc. – Case No. 15-cv-2946 (PAC)*</u>

Dear Judge Crotty:

Defendant Innovative Biodefense, Inc. ("IBD") respectfully submits the following response to the July 2, 2015 letter from James Arden, counsel for Plaintiff GOJO Industries, Inc. ("GOJO").

## Depositions of IBD Representatives

With regard to the scheduling of depositions in this matter, I have discussed the scheduling issues with GOJO's counsel in Ohio, Mark Skakun, not Mr. Arden. GOJO's claim that IBD agreed to have the depositions of IBD's representatives, Colette Cozean and Jesse Cozean, taken on July 7 and 8 is not accurate.

On several occasions over the last few weeks, Mr. Skakun and I discussed scheduling the Cozeans' depositions, as well as the depositions of witnesses from GOJO, and other witnesses from IBD (Gary Klein and Steve Cerwinski). Throughout these discussions, I discussed scheduling all of the depositions in the most efficient manner possible since Mr. Klein and Mr. Cerwinski are not California residents (one is in New York, and the other in Florida). Due to Mr. Skakun's need to travel to California for the depositions, and to avoid multiple trips to other states, I have been attempting to arrange a schedule which would allow the IBD depositions to take place during one week when all the IBD witnesses would be available in California.

During these discussions, GOJO unilaterally noticed July 7 and 8 for the Cozeans' depositions. On June 19, in response to the notices, I spoke with Mr. Skakun and proposed that the depositions for the IBD representatives occur during the week of July 20, when the IBD representatives would be in California for a company meeting. Over the next week, I had other telephone conferences with Mr. Skakun regarding deposition scheduling. Mr. Skakun stated that he was not available on July 20 and 21 because of a conflict with a mediation, and was not available on July 22 because of the Status



Conference scheduled in this action. I also proposed having the depositions go forward during the week of July 13, and again offered to have all the IBD witnesses available then. Mr. Skakun stated that he could not take the Cozeans' depositions during the week of July 13, citing his need to participate in a golf tournament in Ohio that week.

On June 26, I had another discussion with Mr. Skakun in which I discussed scheduling of depositions. I pointed out that the July 22 Status Conference had been moved to July 9 and therefore the parties were available at least three days of the week during July 20, the week when all IBD witnesses were available for deposition. Mr. Skakun said he would consider taking the depositions that week. In addition, during the call, I also raised the issue of having a telephonic settlement conference between the parties the following week. I explained that the parties were expected to try to resolve the issues and it would be easier to settle the matter before the parties expended time and effort preparing for and taking the depositions. In response, Mr. Skakun stated that this was a "great idea" and possibly could avoid his travelling to California for depositions. Mr. Skakun stated that he would provide GOJO's availability for a call, but we tentatively agreed that the settlement conference would be on June 30 or July 1.

The following Monday, June 29, Mr. Skakun called and said he was still discussing a date for the settlement conference with his client. He explained that the settlement conference call would likely be Wednesday as he was out of the office on Tuesday. I again raised with Mr. Skakun scheduling the depositions of the IBD representatives during the week of July 20 (with the depositions of the GOJO's witnesses to start the following week) to give the parties additional time to discuss settlement and resolve this matter. I further confirmed to Mr. Skakun that the IBD representatives would be in California and would be available for depositions on July 22, 23, 24, and, if necessary, Saturday, June 25.

On July 1, I received a telephone call from Mr. Skakun in which he informed me that GOJO said "no" to a settlement conference call. Mr. Skakun said he wanted to proceed with the Cozeans' depositions on Tuesday, July 7 and 8. I was surprised to hear that GOJO had changed its mind on having a settlement conference. I also was surprised with Mr. Skakun's statement that he wanted to take the depositions on July 7 and 8 as I understood we were discussing having those the week of July 20, particularly given the focus on having a settlement conference. I told him I would have to check on the depositions, as IBD had planned on those depositions going forward the week of July 20.

I then got back to Mr. Skakun by letter later that same day and expressed his surprise at GOJO's sudden change of heart. (A copy of my July 1, 2015 letter is attached as Exhibit "A" hereto.) I objected to GOJO's attempt to unilaterally schedule the Cozeans' depositions, informed GOJO that the Cozeans would be on a family trip in

# PAYNE & FEARS

The Honorable Paul A. Crotty
July 8, 2015
Page 3

Arizona until the following week, and would not have time to prepare for the depositions. I also explained that going forward with the Cozeans' depositions would unnecessarily force the parties to break up the IBD depositions, necessitating additional travel to New York and Florida. I also objected to GOJO's failure to comply with its own discovery obligations, which impacted IBD's ability to prepare for the depositions. Specifically, GOJO failed to provide a timely response to IBD's interrogatories (due June 22) and, after an extension was provided, its responses to IBD's production requests were due on July 6.[1] To date, GOJO has also refused to provide any specific dates for its representatives' depositions despite multiple requests for over a month.

GOJO's assertion that IBD agreed to schedule the deposition of third-party Zylast Direct's representative, Hotan Barough, on July 9, is also not accurate. On June 24, I informed Mr. Skakun that my firm does not represent Zylast Direct (a separate company from IBD). As a courtesy, I offered the use of our office in Irvine, California for a deposition if GOJO elected to depose Mr. Barough and a proper subpoena was served. I also proposed that his deposition could go forward the week of July 20, and likely would be very short so could be completed the same day as Gary Klein (an IBD representative who will be in California that week.) This was the extent of the discussions that the parties had regarding Mr. Barough. I also note that we have never been served with a copy of a deposition subpoena for the July 9 deposition in accordance with Rule 30(b)(1).

### Responses to GOJO's Discovery Requests

IBD has complied with its discovery obligations in this case. GOJO's claim that there are "issues" regarding IBD's discovery responses is especially troubling in light of GOJO's own failure to comply with its discovery obligations and its production of only 14 pages of documents. GOJO has yet to produce any substantive documents supporting its claims. Moreover, GOJO's failure to meet and confer with IBD after its recent document production does not comply with the Rule 3C of the Court's Individual Rules of Practice.[2] Simply attaching a copy of its first meet and confer letter makes it impossible for the Court and IBD to ascertain precisely which of the discovery requests remain at issue and if they are objectionable on various other grounds. In addition to the two prior document productions in June, IBD is providing a supplemental production of responsive documents on July 8. IBD will produce any documents that it agreed to

---

[1] While GOJO eventually provided discovery responses on July 6, the responses contained a litany of objections, and GOJO's entire document production consisted of only 14 pages of documents which were all marked "Attorneys' Eyes Only."

[2] In addition to the two prior document productions in June, IBD is providing a supplemental production of responsive documents on July 8.

# PAYNE & FEARS

The Honorable Paul A. Crotty
July 8, 2015
Page 4

provide in response to GOJO's production requests, and is more than ready to meet and confer with GOJO on any remaining issues.

### Third-Party Responses and Objections to Subpoenas

In addition to the issues raised by IBD in Mr. Kurland's June 19 letter regarding the third-party subpoenas, certain third-parties have objected to the subpoenas. For example, on July 8, 2015, we received a copy of objections by Benchmark Cosmetics Laboratories, a copy of which is attached hereto as Exhibit "B." These are in addition to objections by other third-parties (Bocchi Laboratories and Westwood Laboratories) which are attached to Mr. Arden's July 2 letter.

Thank you for Your Honor's consideration. We look forward to discussing these matters with you on Thursday.

Very truly yours,

/s/ Benjamin A. Nix

Benjamin A. Nix
PAYNE & FEARS LLP

BAN/RTM

cc:  Mark J. Skakun, Esq. (by ECF)
     Justin S. Greenfelder, Esq. (by ECF)
     James D. Arden, Esq. (by ECF)
     Adam K. Kurland, Esq. (by ECF)

4844-9420-0101.2

# EXHIBIT A



4 Park Plaza, Suite 1100
Irvine, CA 92614
T 949. 851.1100
F 949. 851.1212

Benjamin A. Nix
(949) 797-1249
ban@paynefears.com

File No.: 4863.002

July 1, 2015

***VIA E-MAIL AND U.S. MAIL***

Mark J. Skakun, Esq.
Buckingham, Doolittle & Burroughs LLC
4518 Fulton Dr. NW, Suite 200
Canton, Ohio 44718

Re:   *Gojo Industries, Inc. v. Innovative Biodefense, Inc.*
      *S.D.N.Y. Case No. 15-cv-2946 (PAC)*

Dear Mark:

This letter follows up to our conversation this afternoon regarding the depositions of Innovative Biodefense, Inc.'s representatives in the above matter. With regard to your inquiry today regarding the depositions of Jesse Cozean and Colette Cozean for next week, I wanted to get back to you on that issue and let you know that, at this late date, those dates will not work for those depositions.

On several occasions over the last several weeks, I have discussed with you scheduling the depositions of Jesse Cozean and Colette Cozean of Innovative Biodefense, as well as witnesses from Gojo Industries. In addition to seeking to arrange the Cozeans' depositions, you have stated that you would also like to take the depositions of other witnesses affiliated with Innovative Biodefense, Gary Klein and Steve Cerwinski, as well as the deposition of a third party, Zylast Direct, which is in California. As you know, Mr. Klein and Mr. Cerwinski are not in California (one is in New York, and the other in Florida). Due to your need to travel here for the depositions, and to potentially avoid multiple trips to other states, I sought to arrange the depositions during a week when all the witnesses could be available. On June 19, I proposed to you that we hold these depositions during the week of July 20, when the Innovative Biodefense representatives were going to be in California for a meeting.

Over the following week or so, we had some back and forth on scheduling the depositions, including your letting me know of conflicts you had during the week of July 20. I then proposed the week of July 13 as an alternative week for the Innovative Biodefense representatives, but you stated that you had conflicts that week.

On Friday, June 26, we had another discussion regarding various issues in the case, including deposition scheduling. During the call, I mentioned to you that Innovative Biodefense would like to avoid the expense of preparing for and taking



# PAYNE & FEARS

Mark J. Skakun, Esq.
July 1, 2015
Page 2

depositions, as the case would be much harder to settle after the expenditure of those efforts. I suggested that the parties have a settlement telephone conference this week (either Tuesday or today) in which a potential settlement could be reached. In response, you said you thought that was a "great idea," and further stated that you would get back to me on when your client was available for the call. On Monday of this week, we had another call in which you said you were talking with your client about the best date for a meeting, and said it would likely be Wednesday as you were out of the office on Tuesday. During our Monday call, I again mentioned to you that we would like to have the depositions during the week of July 20 (with the depositions of the Gojo witnesses to start the following week). I pointed out that would give the parties additional time to discuss and perhaps resolve the settlement issues, and also noted that Judge Crotty had vacated the Status Conference for July 22 (moving it up to July 9) which alleviated one of your conflicts that week. Although you expressed that you had a conflict that week due to a mediation on July 20 and 21, I noted that since the Status Conference on July 22 was off calendar, the rest of that week was free. I mentioned we could have the depositions on June 22, 23, 24, and, if necessary, Saturday, June 25, when the Innovative Biodefense witnesses were in California. I pointed out that while you might need the full seven-hour limit with Jesse Cozean and Colette Cozean, I anticipated that Mr. Klein, Mr. Cerwinski, and Hotan Barough's deposition each would be less than two hours and could be completed in one day. You said you would "think about" the proposal and get back to me. You also said you would let me know about the settlement conference between the parties.

This morning, I followed up with you with an email regarding the settlement conference we planned to have this week and the depositions for July 20. This afternoon, frankly, I was surprised from your phone call in which you informed me that your client said "no" to having any settlement conference. I was surprised because I thought we both agreed it was a good idea. This is a Lanham Act case in which the parties are expected to try to resolve the issues. I also note that the Court is expecting the parties to discuss settlement before the next Status Conference – now July 9. I was also surprised that your clients want now to go forward with depositions of Jesse Cozean and Colette Cozean next week. Not only was this a surprise in light of the efforts to focus on settlement and avoid the deposition costs, it also gave us lack of sufficient notice regarding the depositions in light of the holiday weekend. The Cozeans are leaving town on Thursday on a family trip to Arizona. Under the circumstances, we do not have sufficient time to prepare for the depositions which you now would like hold next week. In addition, going forward with the depositions next week will unnecessarily force the parties to break up the remainder of the Innovative Biodefense depositions and travel to New York and Florida, when all the depositions could have been held during one week here.



Mark J. Skakun, Esq.
July 1, 2015
Page 3

      We also note that Gojo has not complied with its discovery obligations to Innovative Biodefense which also impacts the ability to go forward with the depositions next week. Innovative Biodefense served Interrogatories and Requests for Production on Gojo on May 20 by overnight mail. Gojo's responses were due on June 22. On June 18, your firm requested a two-week extension for the document production to July 6. No extension was sought or provided for the Interrogatory responses, which are now past due. In addition, we need the production of documents due from Gojo on July 6 to prepare the Innovative Biodefense witnesses for the depositions and obviously will not receive the documents in time for depositions which you seek to start on July 7 and 8.

      In summary, Innovative Biodefense remains ready to proceed with the depositions during the week of July 20. Alternatively, we will make the witnesses available during the week of July 13.

Very truly yours,

Benjamin A. Nix
PAYNE & FEARS LLP

BAN/tc

4816-7175-1461.1

**EXHIBIT B**

**Conley, Tina M.**
___

| | |
|---|---|
| **From:** | Louis C. Paul <lpaul@paulipgroup.com> |
| **Sent:** | Wednesday, July 08, 2015 9:36 AM |
| **To:** | Justin Greenfelder |
| **Cc:** | Mark Skakun; Matsuishi, Robert T.; Kathryn Pratt |
| **Subject:** | Re: Gojo Industries vs. Innovative BioDefense |

July 8, 2015

<u>Via E-mail</u>

Justin S. Greenfelder, Esq.
Buckingham, Doolittle & Burroughs, LLC
4518 Fulton Drive NW, Suite 200
Canton, OH 44718

    Re:    *Gojo Industries, Inc. v. Innovative Biodefense, Inc. et al.*

Dear Justin:

This e-mail follows up on my letter dated June 29, 2015 and our exchange of e-mails on June 30, 2015, all relating to a subpoena served by your client, Gojo Industries ("Gojo") on our client, Benchmark Cosmetic Laboratories ("BCL"), a third-party from whom information and documents are being sought in connection with the above-referenced litigation.

In my letter dated June 29th, BCL objected to IBD's requests, in part, for seeking information that is proprietary and confidential to third parties, including the defendant, Innovative Biodefense, Inc. (IBD). You replied the next day by e-mail, noting that a Stipulated Protective Order had been entered in the above litigation, and that Order would cover information that is confidential and proprietary to IBD.

Your e-mail recognized that BCL had other objections, including to the scope or breadth of documents requested. In particular, you asked that BCL send any additional objections (beyond the confidentiality of IBD's information) before July 9th, so the Court could address the same at a conference scheduled for that date. Your e-mail conveyed a willingness on the part of Gojo to "work" with BCL so as not to place an undue burden on BCL. It is in the spirit of working cooperatively that this letter is being sent.

As noted in my letter dated June 29th, BCL objects to certain document requests as overly broad and burdensome – in particular, Request #15, which requests ***all*** documents in the possession of BCL "concerning alcohol-based hand hygiene products, including without limitation PURELL® Sanitizer." BCL objects to this request on several grounds.

First, the term "alcohol-based hand hygiene products" is overly broad and/or ambiguous. The International Cosmetic Ingredient Dictionary and Handbook – a standard reference for naming ingredients in cosmetic and personal care products –contains over 140 entries containing the term "alcohol". As such, the term "alcohol" is overly broad and ambiguous.

1

Likewise, the terms "alcohol-based" and "hand hygiene" are ambiguous and overly broad. Even if Gojo were to limit its request a specific "alcohol" ingredient or ingredients, and even further to the concentration of the specific "alcohol" ingredient(s), this request would still be objectionable.

BCL is in the business of formulating cosmetic and personal care products. Many formulations developed by Benchmark contain an ingredient that is an "alcohol". Requiring BCL to produce documents concerning **_all_** "alcohol-based hand hygiene products" in its possession would be time consuming and expensive, and, therefore, unduly burdensome. Benchmark also objects to this request as not reasonably calculated to lead to the discovery of information that is relevant to the issues in this litigation.

Moreover, BCL's formulation of alcohol-containing products for clients other than IBD was done under confidentiality obligations to those clients. In other words, information relating to alcohol-containing products developed by BCL for clients other than IBD is proprietary to those other clients. In order for BCL to comply with this subpoena pursuant to BCL's confidentiality obligations to its other clients, BCL would have to advise numerous other clients of the subpoena, and provide them with an opportunity to object to the disclosure of their proprietary and confidential information.

Request 11 and 15 are objected to on the ground that the term "Purell" is ambiguous. "Purell" is a trademarked term covered by two registered US trademarks and two pending US trademark applications owned by Gojo and relates to a line of products. In this regard, BCL notes that the Stipulated Protected Order addresses patent-related information. Because different products, having different ingredients, can be marketed and sold under the same trademarked term – the patent law has found that use of a trademarked term to be "indefinite".

BCL recognizes that the term "Zylast" is defined in the subpoena – namely, as "Zylast brand products _including, but not limited to,_ hand sanitizers, lotions, antibacterial soaps, and surgical scrubs." (emphasis added). Despite this definition, because the term "Zylast" is ambiguous BCL objects to Requests 1 – 9 and 11 – 14, and requests clarification of the scope of information being sought.

First, as discussed immediately above, a trademark termed is, by its nature, indefinite. Second, Requests 1 – 9 and 11 – 14 are unclear as to whether "Zylast product(s)" refers, and is limited to, specific products that are being sold by IBD that are the subject of the instant lawsuit. In the process of developing personal care and cosmetic products, BCL often creates many iterations or versions of a formulation. Typically, BCL's customer, including here IBD, owns only one "approved" version of a formulation – the product that is ultimately commercialized. It is therefore with respect to the formulations developed by Benchmark that IBD owns and ultimately commercialized under the trademark "Zylast" that the scope of the document requests should be limited.

BCL also objects to the following terms as ambiguous:

"labeling produced by [BCL]" (Request #2);
"sample" "formula cards" and "active ingredients" (Request #3);
"manufactured" and "sample" (Request #4);
"safety, efficacy, and functionality data" (Request #5);
"instant hand sanitizers "and "hand hygiene products" (Request #14);
"alcohol-based hand hygiene products" (Request #15).

2

BCL views Request #s 2 and 3 as duplicative in that both requests seek a listing of the ingredients included in the final formulations developed by Benchmark and owned by IBD that were/are commercially marketed and sold under the Zylast trademark. BCL would produce the same.

Request #3 is directed to a "sample of each Zylast product manufactured by [BCL]". In developing products for its clients, BCL often retains a small sample of the final product – the product approved and owned by the client. BCL sometimes does so for purposes of assuring the long-term stability of a product – i.e., that the product as approved by the client does not separate in different parts or phases (e.g., water-soluble and oil-soluble) and/or that ingredients do not "settle" or agglomerate. Other times, BCL retains a sample for purposes of complying with applicable regulations. Here, to the extent that BCL does have in its possession a small amount of a formulation that was ultimately commercialized by IBD, BCL has compelling reasons for retaining the same.

With respect to Request #4, in the product development process, a chemist or technician at BCL combines (i.e., mixes) specific ingredients, in specific amounts, in specific steps, creating a small, "lab-scale" batch of a formulation that is sent to a client for evaluation and, ultimately, approval. BCL does not "manufacture" larger, commercial size batches.

Request #1 seeks "any and all communications with IBD" concerning Zylast products. In our teleconference, your colleague, Mark Skakun, referenced an unrelated civil litigation "involving patents" in which IBD is a party. BCL objects to Request #1 and any other request to the extent it seeks documents or information relating to an unrelated litigation "involving patents" as not being reasonably calculated to lead to the discovery of information that is relevant to the issues in this litigation. BCL further objects to any requests that seeks documents and information that is protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

More generally, BCL objects to the subpoena as unduly burdensome to the extent that it requests documents and information that are readily available or more accessible to Gojo from documents or information that IBD previously produced. BCL reserves its right to make further objections after the Court rules on the discovery issues raised by IBD and in this letter in the conference set for July 9th.

I am traveling throughout the remainder of this week, with limited access to email. I will plan to follow-up next week.

Kind regards,
Louis

Cc:
Mark Skakun (by email)
Robert Matsuishi (by email)

**Louis C. Paul & Associates, PLLC**
299 Park Avenue, 6th Floor
New York, NY 10171

Tel – 212.223.8200
eFax – 203.621.3420
lpaul@paulipgroup.com

**From:** Justin Greenfelder <jgreenfelder@bdblaw.com>
**Date:** Tuesday, June 30, 2015 11:08 AM
**To:** "Louis C. Paul" <lpaul@paulipgroup.com>
**Cc:** Mark Skakun <mskakun@bdblaw.com>, Kathryn Pratt <kpratt@paulipgroup.com>
**Subject:** RE: Gojo Industries vs. Innovative BioDefense

Mr. Paul ,

Thank you for your email. In light of the entry of the protective order, if your client has specific objections to any of the specific document requests included in the subpoena (keeping in mind that a confidentiality objection is now moot), please produce them prior to July 9 so we can address it with the judge at that time. As you can certainly appreciate, we don't want to have to bother the judge with these issues more than once. Moreover, as you can see from Mr. Arden's letter filed on June 24, we dispute IBD's standing to assert objections other than confidentiality (which is now moot). We also dispute IBD's incorrect interpretation of Rule 45 regarding the validity of the subpoenas. Also, IBD's objections on the breadth of the subpoenas proceeds from a narrow and incorrect reading of the Complaint and its own Counterclaim.

If your client has specific objections regarding the scope or breadth of documents requested, please contact me or Mr. Skakun and we would be happy to work with you. As you know, your client was identified by IBD as having discoverable knowledge of the claims in this lawsuit. We certainly do not intend to place an "undue burden" on your client, but we expect them to make a good faith effort to respond to the subpoena. Please advise when we can expect to begin receiving your client's production.

Thank you,

Justin


**Justin S. Greenfelder**
**Buckingham, Doolittle & Burroughs, LLC**
**4518 Fulton Drive NW, Suite 200**
**Canton, OH 44718**

d:  330.491.5230
f:  330.252.5520

jgreenfelder@bdblaw.com
bdblaw.com

4



Download my VCard
View my Biography

Privacy Notice

**From:** Louis C. Paul [mailto:lpaul@paulipgroup.com]
**Sent:** Tuesday, June 30, 2015 10:40 AM
**To:** Justin Greenfelder
**Cc:** Mark Skakun; Kathryn Pratt
**Subject:** Re: Gojo Industries vs. Innovative BioDefense

Justin –

Thanks for your e-mail below. As noted in my letter of yesterday, Benchmark views many of the requests in the subpoena as overly broad and imposing an undue burden on a non-party witness. Reviewing the docket, I understand that Innovative Biodefense has moved to limit the scope of documents that would be produced by third parties and that a conference is scheduled with the judge on July 9, 2015 to address this issue. Please let us know how the court rules, so Benchmark can appropriately respond. I am traveling through the end of next week, returning to the office on July 13. During this time I will have limited access to e-mail.

Kind regards,
Louis

**From:** Justin Greenfelder <jgreenfelder@bdblaw.com>
**Date:** Tuesday, June 30, 2015 9:19 AM
**To:** "Louis C. Paul" <lpaul@paulipgroup.com>
**Cc:** Mark Skakun <mskakun@bdblaw.com>
**Subject:** RE: Gojo Industries vs. Innovative BioDefense

Mr. Paul,

I am working with Mark Skakun on this matter, and he forwarded me your letter dated June 29, 2015. Attached please find a stipulated protective order entered by the Court on June 29, 2015. Please advise as to when we can expect to receive your client's documents in response to the subpoena. We appreciate your cooperation.

Thank you,

Justin

Justin S. Greenfelder
Buckingham, Doolittle & Burroughs, LLC
4518 Fulton Drive NW, Suite 200
Canton, OH 44718

d:  330.491.5230
f:  330.252.5520

jgreenfelder@bdblaw.com
bdblaw.com



Download my VCard
View my Biography

Privacy Notice

Begin forwarded message:

> **From:** Kathryn Pratt <kpratt@paulipgroup.com>
> **Date:** June 29, 2015 at 5:26:31 PM EDT
> **To:** "mskakun@bdblaw.com" <mskakun@bdblaw.com>
> **Cc:** "rtm@paynefears.com" <rtm@paynefears.com>
> **Subject: Gojo Industries vs. Innovative BioDefense**
>
> Dear Mr. Skakun:
>
> Please see the attached letter sent on behalf of Benchmark Cosmetic Laboratories.  A hard copy will follow by mail.
>
> Kind regards,
> Kathryn Pratt
>
> **Louis C. Paul & Associates, PLLC**
> 299 Park Avenue, 6th Floor
> New York, NY 10171
> Tel – 212-223-8200
> kpratt@paulipgroup.com
>
>
> cc: rtm@paynefears.com

6